[710 NYS2d 41]

Rafi M. Khan, Respondent, v New York Times Company, Inc., et al., Appellants, et al., Defendant.

First Department, June 22, 2000

## APPEARANCES OF COUNSEL

*Richard A. Fogel* of counsel (*Bernard L. Burton* on the brief; *McMillan, Rather, Bennett & Rigano, P. C.,* and *Burton & Associates, P. C.,* attorneys), for respondent.

*John S. Kiernan* of counsel (*Jeremy Feigelson* and *Adam Liptak* on the brief; *Debevoise & Plimpton,* and *The New York Times Company Legal Department,* attorneys), for appellants.

## OPINION OF THE COURT

ANDRIAS, J.

It is undisputed that two New York Times articles written by its reporter, Susan Antilla, and published on October 19, 1993 and January 14, 1994 were false and defamatory in that the first article, in pertinent part, falsely described plaintiff as "a West Coast broker who was recently sued by the SEC and by private investors contending stock fraud," while the second falsely described him as "a stock promoter * * * who was fined for securities fraud in Canada in 1976." The first and second causes of action for libel are based on those articles.

As admitted by defendant reporter, the misstatement in the first article was based upon "a mistake made in comprehending" a Wall Street Journal story which mentioned plaintiff and the misstatement in the second was based upon her misreading of another article on the Bloomberg Business News wire service. It is also undisputed that, after the first article, plaintiff phoned Ms. Antilla to inform her that the Securities and Exchange Commission (SEC) had not sued him. A correction to that effect was published six days later. A similar correction to the effect that plaintiff had not been fined for securities fraud in Canada in 1976 was published, at plaintiff's instance, two days after the second article.

Plaintiff's third cause of action is based on a January 13, 1994 Orange County Register article, entitled, "Additional Deals Involving Khan Coming to Light." This article included a subheading which stated, "SEC documents say the ICN shareholder, who is trying to oust its board, did favors for several of his customers." The article itself constituted an edited version of Ms. Antilla's January 12th Times article.

Defendants do not dispute that the two Times articles were false and defamatory, the only issue being whether the articles were published with actual malice. This appeal arises from the denial of that part of defendants' motion for summary judgment seeking dismissal of the first three causes of action for libel as against the Times and Ms. Antilla.

In reviewing Ms. Antilla's explanations for including the false information in her articles, the IAS Court noted that "the difficulty arose from [her] inability to comprehend the accurate published articles on which [she] relied." The court presented the issue of the case as follows: "Is the record sufficient to pose a triable issue of fact regarding whether the reporter engaged in reckless behavior for a professional investigative journalist under the standard articulated in *Times v Sullivan* [376 US 254]?"

Based upon the opinion of plaintiff's expert that defendants ignored the basic tenets of journalism: accuracy and fairness, and had acted with reckless disregard for the truth, as well as the fact that, as a matter of "objective reality," Ms. Antilla misstated her sources, the court denied defendants' motion, holding that a jury could find that defendants acted with "actual malice." In this regard, the court distinguished the facts of the instant case from those in *Mahoney v Adirondack Publ. Co.* (71 NY2d 31), which dealt with a reporter's eyewitness account of a football game which differed with some of the other witnesses' perceptions of the same events, in which "the court's dismissal of the libel claim was predicated on the lack of an objective reality in the source material—exactly the opposite situation as presented herein."

In so holding, however, the court mistakenly applied an objective standard of gross irresponsibility, which is only applicable to private figures, rather than applying the subjective actual malice standard applicable to a "limited-purpose public figure" such as plaintiff. Inasmuch as these two standards are quite different and since the record contains no evidence that Antilla could not have misunderstood the source of her information as asserted, defendants are entitled to judgment as a matter of law.

While the court correctly defined the constitutional malice standard as set forth in *New York Times Co. v Sullivan (supra)*, it then proceeded to dilute that standard by finding it comparable to the "gross irresponsibility" standard applicable to private persons as set forth by the Court of Appeals in *Chapadeau v Utica Observer-Dispatch* (38 NY2d 196). Whereas the objective standards of journalism might be relevant to a determination whether defendants satisfied their duty of care under *Chapadeau*, such evidence is insufficient to establish reckless disregard under the constitutional standard of actual malice.

Where plaintiff is a public figure, he must prove, "by clear and convincing evidence," that the published material is false

and that defendant published the material "with actual malice, i.e., with 'knowledge that it was false or with reckless disregard of whether it was false or not' " (*Masson v New Yorker Mag.*, 501 US 496, 510, quoting *New York Times Co. v Sullivan, supra*, at 280). A "reckless disregard" for the truth requires more than a departure from reasonably prudent conduct (*Harte-Hanks Communications v Connaughton*, 491 US 657, 688). "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" (*St. Amant v Thompson*, 390 US 727, 731). The standard set forth by the Supreme Court is a subjective one, requiring that there be sufficient evidence to permit the conclusion that the defendant had a "high degree of awareness of * * * probable falsity" (*Garrison v Louisiana*, 379 US 64, 74), or must have "entertained serious doubts as to the truth of his publication" (*St. Amant v Thompson, supra*, at 731).

The constitutional malice standard is to be distinguished from the standard articulated by New York courts applicable to private persons, which permits recovery when a defendant acts "in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties" (*Chapadeau v Utica Observer-Dispatch, supra*, at 199). The *Chapadeau* standard is a "less demanding" standard, and focuses on the journalist's satisfaction of objective professional standards, whereas the actual malice test focuses on defendants' subjective state of mind (*see, e.g., Immuno AG. v Moor-Jankowski*, 145 AD2d 114, 125, *affd* 77 NY2d 235).

In addition to mistakenly combining the two standards in setting forth the definition of malice, the IAS Court's analysis of plaintiff's evidence demonstrates that it did not hold plaintiff to his burden of demonstrating with "convincing clarity" that a reasonable fact finder could find actual malice (*Herbert v Lando*, 781 F2d 298, 305, *cert denied* 476 US 1182). The court suggested that a jury could infer "actual malice" from facts showing that Ms. Antilla did not undertake reasonable steps to discover her errors, but an analysis of whether defendant's actions measure up to reasonable and/or professional standards is irrelevant to the inquiry whether she actually doubted the truth of her assertions.

Contrary to plaintiff-respondent's argument that the usual summary judgment rules are applicable, summary judgment is particularly favored by New York courts in libel cases (*see,*

*Freeman v Johnston,* 84 NY2d 52, *cert denied* 513 US 1016; *Immuno AG. v Moor-Jankowski,* 77 NY2d 235, 256, *supra, cert denied* 500 US 954). Here, Ms. Antilla's affidavit and her deposition testimony, in which she explained how the particular language of her sources caused her to misperceive what was said about plaintiff, sufficiently shows that defendants have demonstrated prima facie their entitlement to summary judgment. In opposition, plaintiff has the burden of establishing with "convincing clarity" that the statements were published with actual malice. As defendants argue, the IAS Court should have held that plaintiff failed to present evidence with " 'convincing clarity' " that defendants were aware that the two Times articles were probably false (*Freeman v Johnston, supra,* at 57; *Sweeney v Prisoners' Legal Servs.,* 84 NY2d 786, 793).

The facts of *Mahoney v Adirondack Publ. Co.* (71 NY2d 31, *supra*) are apposite and the IAS Court's attempt to distinguish that case was misplaced. In *Mahoney (supra),* a reporter misheard a number of oral statements by a high school football coach during a losing game, and reported that plaintiff had told his quarterback " ' "Come on, get your head out of your &!(!!(&." ' " when the coach actually had merely sought to encourage his quarterback by saying " 'Get your head up' " or " 'Keep your head up.' " (*Supra,* at 37, 38.) Plaintiff alleged that a jury could reasonably infer "actual malice" from the reporter's error, because it was undisputed that he had misstated what the plaintiff had said and others in the same proximity had heard correctly what plaintiff said. While the Third Department had accepted this inference, the Court of Appeals disagreed, stating: "The inference depends for its validity on the premise that the eyewitness could not have perceived and understood anything but the truth. Thus, in reporting something else, the observer must have departed from the truth by design. The underlying premise is valid, however, only if the events were unambiguous and the setting was such that the observer could not have misperceived those events. Such conditions, however, cannot simply be assumed; as the proponent of the inference and the bearer of the burden of proof of actual malice, the plaintiff must demonstrate that they exist. No such showing was made here" (*supra,* at 40).

Whereas *Mahoney* involved the publication of misinformation based upon the reporter's misperception of what he heard, the instant case involves a reporter's misreading of a written report. The fact that there was conclusive evidence that the reporter's description of the coach's statement was false and

that, indeed, other witnesses similarly situated to the reporter in *Mahoney* heard the coach's statements correctly did not permit the inference that the reporter could not have misperceived the statement. Similarly, the fact that Ms. Antilla's reading of the source articles was clearly incorrect and that there is evidence that, with the exercise of reasonable care, she would have realized her mistakes, does not permit the inference that she could not have misperceived the information she relied on.

Moreover, as in *Mahoney (supra)*, the evidence supports the conclusion that the false information was more the product of Ms. Antilla's misperception than fabrication. In *Mahoney (supra*, at 37, 38), the reporter's account, " ' "[G]et your head out of your &!(!!(&." ' " was similar to plaintiff's account, " 'Get your head up.' " In the instant case, a comparison of Ms. Antilla's erroneous accounts with the actual language of the sources she relied on suggests "that the falsity was more the product of misperception than fabrication." (*Supra*, at 40.)

The cases cited by plaintiff for the proposition that summary judgment is disfavored where credibility is at issue (*see, e.g., Dauman Displays v Masturzo*, 168 AD2d 204, *lv dismissed* 77 NY2d 939; *Jastrzebski v North Shore School Dist.*, 223 AD2d 677, 678, *affd* 88 NY2d 946) all come from personal injury or commercial law and have little relevance to this First Amendment libel case. However, where, as here, First Amendment claims are made, mere assertions " 'that the jury might, and legally could, disbelieve the defendant's denial * * * of legal malice' " are not enough. (*Contemporary Mission v New York Times Co.*, 842 F2d 612, 621-622, *cert denied sub nom. O'Reilly v New York Times Co.*, 488 US 856 [citation omitted].)

Furthermore, the evidence that Ms. Antilla did not contact plaintiff with respect to the second article, even after plaintiff corrected her first mistake and allegedly obtained from her a promise that she would verify information with him in the future, is insufficient to create a triable issue of fact as to whether she recklessly disregarded the truth with respect to the second article. Since she obtained her information from a reputable news source and had no reason to doubt the veracity of information in the nature of historical fact, she had no reason to contact plaintiff. She also had no reason to question the accuracy of the Bloomberg report that she misread, since she recently had learned of other alleged misdeeds by plaintiff.

In *Sweeney v Prisoners' Legal Servs.* (84 NY2d 786, *supra*), where plaintiff correction officer was defamed by allegations

that he abused prisoners, which information turned out to be false inasmuch as the complaining prisoner had misidentified plaintiff, the Court of Appeals noted that, in satisfying the reckless disregard standard, "evidence that defendants purposefully avoided the truth may support a finding of actual malice if supported by evidence that defendants' 'inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity' of the published statement" (*supra*, at 793 [citation omitted]). Thus, although the complaining prisoner was a convicted felon and presumably lacked credibility, the Court held that, in the absence of evidence that defendants were aware that the prisoner's complaint was probably false, they could not be found to have harbored an intent to avoid the truth. Similarly, in *Sands v News Am. Publ.* (237 AD2d 177), a case in which the plaintiff contacted the reporter prior to publication and denied related allegations, this Court concluded that plaintiff had failed to adduce clear and convincing evidence of actual malice.

In light of the foregoing, the IAS Court erred in denying defendants summary judgment on plaintiff's first two causes of action for libel and those causes of action should have been dismissed.

Plaintiff's third cause of action for libel based upon the Orange County Register article should have also been dismissed since it is based on allegedly defamatory statements that simply cannot be attributed to defendants. Plaintiff's complaint alleges that defendants' liability is predicated upon the fact that the Orange County Register, a California newspaper, had a "contractual or other relationship" with the Times and is a subscriber of the Times syndication service. As defendants point out, the allegedly libelous subheading never appeared in the Times and there is no evidence that Ms. Antilla or anyone else employed by the Times participated in creating this new subheading. It is axiomatic that a defendant cannot be held liable for a libelous statement that it did not write or publish (*Karaduman v Newsday, Inc.*, 51 NY2d 531). Defendants presented unrebutted evidence that the Register had simply pulled up the Times article from its wire service and unilaterally adapted the article to suit its own editorial purposes. This independent adaptation included the insertion of the allegedly defamatory subheading.

Accordingly, the order of the Supreme Court, New York County (Diane Lebedeff, J.), entered October 16, 1998, which, to the extent appealed from as limited by the briefs, denied

defendants' motion for summary judgment dismissing the first, second and third causes of action for libel as against defendants The New York Times Company, Inc. and Susan Antilla, should be reversed, on the law, with costs, defendants' motion granted and the first, second and third causes of action in the complaint dismissed as to those defendants. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint as against them.

Rosenberger, J. P., Williams, Buckley and Friedman, JJ., concur.

Order, Supreme Court, New York County, entered October 16, 1998, which, to the extent appealed from as limited by the briefs, denied defendants-appellants' motion for summary judgment dismissing the first, second and third causes of action for libel as against them, reversed, on the law, with costs, defendants-appellants' motion granted and the first, second and third causes of action in the complaint dismissed as to those defendants.