**Michael MELNITZKY, Plaintiff,**

v.

**Robert ROSE, Defendant.**

**No. 03 Civ. 5469(VM).**

United States District Court,
S.D. New York.

Jan. 13, 2004.

Jonathan Kord Lagemann, Law Offices of Jonathan Kord Lagemann, New York, NY, for defendant.

## DECISION AND ORDER

MARRERO, District Judge.

. Pro se plaintiff Michael Melnitzky ("Melnitzky") initiated the present action

by filing a four-count complaint in New York State Supreme Court against defendant Robert Rose ("Rose") alleging fraud and breach of contract; defamation; civil conspiracy; and prima facie tort. Rose timely removed the action to federal court pursuant to 28 U.S.C. § 1446(b) and properly invoked this Court's jurisdiction on diversity of citizenship grounds under 28 U.S.C. § 1332. In lieu of an answer, Rose filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of all four counts in Melnitzky's complaint for failure to state a claim upon which relief can be granted. Melnitzky opposes the motion. For the reasons described below, Rose's motion to dismiss the four causes of action in the complaint is granted.

## I. FACTUAL BACKGROUND [1]

Rose contacted Melnitzky in May of 2002 for the purpose of possibly retaining Melnitzky's professional services in the evaluation of certain personal property in the Estate of James Gordon (the "Estate"). James Gordon ("Gordon") is the recently-deceased uncle of Rose who left certain personal property located in a Manhattan apartment, including artwork and other items. Rose represented to Melnitzky that he was acting on behalf of his mother, Hazel Kaufman ("Mrs.Kaufman"), who along with her husband, Bruce Kaufman ("Mr.Kaufman"), are the Executors of Gordon's Estate.[2]

Melnitzky and Rose met at Gordon's apartment in order to enable Melnitzky to begin his assessment of the property. During this meeting, Melnitzky provided his professional opinion to Rose as to certain artwork in the Estate. Melnitzky also informed Rose that considerable more time and effort, including several additional visits to the apartment, would be required in order to complete the assessment of all the property. Accordingly, the fee for Melnitzky's services was not agreed upon during this initial visit in light of the complexity of the services that would be required. Melnitzky and Rose had prior professional dealings in which Rose had retained Melnitzky's services through a connection with Sotheby's in New York, where Melnitzky was engaged as a painting conservator.

Rose made additional arrangements with Melnitzky by telephone, including introducing Melnitzky to Mrs. Kaufman via telephone. During Mrs. Kaufman's phone conversations with Melnitzky, she expressed an interest in retaining his services and made additional arrangements with the building management so Melnitzky could gain access to the apartment. In total, Melnitzky made approximately eight visits to the apartment to continue his evaluation of the property in the Estate.[3]

Before Melnitzky completed his examination of the property, Mrs. Kaufman informed him that her husband was traveling to New York to arrange for the shipment of the property to Arizona, and therefore, Melnitzky should expedite his work. Upon his arrival in New York, Mr. Kaufman informed Melnitzky that his services would no longer be required. Mr. Kaufman dismissed Melnitzky without explanation or any reference to the

---

1. As discussed in the next section, the Court will accept as true all well-pleaded factual allegations in the Complaint for the purposes of the present motion. Accordingly, the following factual description is derived solely from the Complaint and does not account for any factual disputes between the parties.

2. The Kaufmans reside in Arizona and are not parties to this action.

3. Rose provided Melnitzky with a key to the apartment in order to facilitate access.

prior instructions of Rose or Mrs. Kaufman. Melnitzky subsequently wrote to Mr. Kaufman to inform him that the value of the work he had already performed was a debt of the Estate. Mr. Kaufman responded with a letter in which he rejected Melnitzky's claim for payment, stated that Melnitzky entered Gordon's apartment without authorization, and called into question Melnitzky's reputation for honesty and integrity. Melnitzky claims that Mr. Kaufman's letter was circulated among members of Mr. Kaufman's family.

The Complaint sets forth four causes of action. The first cause of action seeks damages for breach of contract and fraud stemming from the termination of Melnitzky's services. (*See* Complaint, *Melnitzky v. Rose*, N.Y. Sup.Ct. Index No. 03/113116, dated July 17, 2003 (the "Complaint"), at ¶ 16.) The second cause of action seeks damages for defamation of Melnitzky's professional reputation resulting from Mr. Kaufman's letter. (*See id.* at ¶ 17.) The third cause of action asserts a claim for civil conspiracy to obtain Melnitzky's services and avoid payment. (*See id.* at ¶ 18.) Finally, the fourth cause of action asserts a claim of prima facie tort in the alternative or in addition to the first three causes of action. (*See id.* at ¶ 19.)

## II. DISCUSSION

### A. *LEGAL STANDARD*

As the United States Supreme Court has explained, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citation omitted). When, as in this case, the plaintiff is not represented by counsel, the Second Circuit has instructed courts to "construe [the com-plaint] broadly and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Board. of Educ. of N.Y.*, 287 F.3d 138 145–46 (2d Cir.2002) (citations omitted); *see also Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000).

For purposes of a motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Levy v. Southbrook Int'l Invs. Ltd.*, 263 F.3d 10, 14 (2d Cir.2001). In so doing, a court must not assess the strength of the plaintiff's allegations, but instead simply "assess the legal feasibility of the complaint." *Sims*, 230 F.3d at 20 (citations omitted). On the other hand, "conclusory allegations need not be credited ... when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995). Thus, in ruling on Rose's motion to dismiss, the Court is mindful that Melnitzky appears pro se, and will grant him broad latitude in interpreting the factual allegations in the Complaint.

### B. *APPLICATION OF THE STANDARD*

Against this legal standard, the Court considers each of the causes of action in the Complaint.

#### 1. *Breach of Contract and Fraud*

Melnitzky's first cause of action asserts a claim for breach of an oral contract and fraud stemming from the termination of his services. Rose argues that the breach of contract claim should be dismissed on two grounds. First, Rose asserts that no contract could have been formed because the fee for Melnitzky's services was never finally determined, and hence, the absence of such a material element of a contemplat-

ed agreement prevents the formation of a binding contract. (*See* Memorandum In Support Of Defendant's Motion To Dismiss, dated July 29, 2003 ("Motion"), at 2–5.) Second, Rose argues that even if a contract were formed, it is only the Kaufmans who contracted with Melnitzky and thus, any breach of contract action against Rose must fail because he is not a party to the agreement. (*See id.* at 5–6.)

In opposition, Melnitzky argues that his prior dealings with Rose established the fee for the services. (*See* Opposition To Defendant's Motion To Dismiss, dated Aug. 9, 2003 ("Opp."), at 2–3.) Melnitzky further argues that Rose was acting "on behalf" of the Kaufmans when he retained Melnitzky for the evaluation of the Estate property.[4] (*Id.* at 3.)

■ With regard to Rose's first basis for dismissing the breach of contract claim, the Court does not agree with Rose that Melnitzky's contract claim must fail because the fee to be paid was never finally determined. Rose is correct that price is generally a critical component of any contemplated contract. Under New York law, however, the absence of the price term is not necessarily fatal to contract formation if the price can be determined through some objective method, such as prior dealings or custom in the industry. *See Carmon v. Soleh Boneh Ltd.,* 206 A.D.2d 450, 614 N.Y.S.2d 555, 556 (App. Div.2d Dep't 1994); *Metro–Goldwyn–Mayer, Inc. v. Scheider,* 75 Misc.2d 418, 347 N.Y.S.2d 755, 761 (N.Y.Sup.1972). Accepting the factual allegations in the Complaint as true and viewing them in the light most favorable to Melnitzky, the Court finds that the

Complaint does allege sufficient facts to support the first element of a claim for breach of contract. Melnitzky's allegations that Rose had prior dealings with him raises at least an inference that the price term can be determined from prior dealings between Melnitzky and Rose and/or the customary rates in the industry. Thus, the problem with Melnitzky's breach of contract claim is not with the sufficiency of the allegations as to the formation of a binding agreement.

■ With regard to Rose's second basis for dismissing the breach of contract claim, the Court agrees with Rose that if any oral agreement was formed, it was between Melnitzky and the Kaufmans as the Executors of the Estate, and not with Rose. There is nothing in the Complaint from which it can be reasonably inferred that Rose possessed the power to bind the Estate or that he so represented to Melnitzky. Although Melnitzky refers to Rose as the "contracting party" in the Complaint (*see* Complaint at ¶ 18), the totality of the facts alleged do not support such a claim.

It is clear from the Complaint that the proper parties to any enforceable contract that may exist are Melnitzky and the Kaufmans and/or the Estate. First, Melnitzky had lengthy conversations on the phone with Mrs. Kaufman regarding his services and it was she who requested that he expedite his work. Second, it was Mr. Kaufman who wrote a letter authorizing Melnitzky to enter the apartment where the property was located. Finally, it was Mr. Kaufman who ultimately dismissed Melnitzky upon Mr. Kaufman's arrival in New York.[5] Accordingly, the Court is per-

---

**4.** With his opposition papers, Melnitzky attached a letter from Mr. Kaufman stating that Melnitzky was authorized to enter Gordon's apartment for the purpose of evaluating the artwork contained therein. (*See* Opp. at Ex. C.)

**5.** In the Complaint, Melnitzky also suggests that his summary dismissal may have been related to his refusal to acquiesce to Mrs. Kaufman's alleged improper requests regarding the evaluation of the property to avoid the payment or taxes. (*See* Complaint at ¶ 18.) If

suaded that even the most liberal reading of the facts alleged in the Complaint fail to establish that Rose is a party to any contract that may have formed for Melnitzky's services.[6]

After presuming the truth of all the allegations in the Complaint and viewing them in a light most favorable to Melnitzky, the Court finds that Rose is at best an agent of the Kaufmans and/or the Estate. Melnitzky himself admits that Rose "was representing their [the Kaufmans] interest in hiring the service of plaintiff" in connection with the evaluation of the Estate property. (*See* Complaint at ¶ 5.) In his opposition to the present motion, Melnitzky also states that Rose "represented himself as the agent of the estate administrators" in Rose's dealings with Melnitzky. (Opp. at 4.) Thus, even after interpreting the Complaint in such a way that it raises "the strongest arguments that it suggests," the Court finds that there is no basis to find that Rose is a party to whatever oral agreement Melnitzky entered into with the Estate. *Weixel*, 287 F.3d at 145–46.

■ Contrary to Melnitzky's argument that because Rose was acting on the Kaufmans' behalf, Rose is responsible for the alleged breach of Melnitzky's oral agreement with the Kaufmans and/or the Estate, it is well established under New York law that an agent will not be held personally liable for the breach of contract by a disclosed principal absent some indication that the agent intended to be so bound. *See Cruz v. NYNEX Info. Res.*, 263 A.D.2d 285, 703 N.Y.S.2d 103, 107 (App. Div. 1st Dep't 2000); *Leonard Holzer Assocs., Inc.*

*v. Orta*, 250 A.D.2d 737, 672 N.Y.S.2d 915, 916 (App. Div.2d Dep't 1998); *Sweeney v. Herman Mgmt., Inc.*, 85 A.D.2d 34, 447 N.Y.S.2d 164, 166 (App. Div. 1st Dep't 1982). Because there is nothing in the Complaint to even suggest that Rose intended to be personally bound by an agreement between Melnitzky and the Estate, Melnitzky's breach of contract claim against Rose fails even the most liberal pleading standard for a motion to dismiss.

■ The first cause of action also alleges fraud, although the same allegations used to describe the breach of contract claim are also used to describe the fraud claim. (*See* Complaint at ¶ 16.) Both New York law and this Court's precedent have established that a plaintiff cannot sustain a cause of action for fraud when the only fraud alleged consists of the breach of a contract between the parties, and such allegations "do not concern representations which are collateral or extraneous to the terms of the parties' agreement...." *Shred–It USA, Inc. v. Mobile Data Shred, Inc.*, 228 F.Supp.2d 455, 463 (S.D.N.Y.2002); *see also Glynwill Investments, N.V. v. Prudential Sec., Inc.*, No. 92 Civ. 9267, 1995 WL 362500, at *7 (S.D.N.Y. June 16, 1995). Thus, "[i]n order to state a claim for fraud separate from a breach of contract, plaintiff must allege the breach of a legal duty which exists independent of the contract." *Glynwill*, 1995 WL 362500, at *7 (citation omitted). No such allegations can be found in the Complaint.

■ In the present case, Melnitzky's allegations in connection with his fraud claim concern only his dismissal by Mr. Kaufman

true, this allegation lends further support to the notion that any oral contract that was formed was between Melnitzky and the Kaufmans and/or the Estate, and not with Rose.

6. In so holding, the Court offers no opinion on the question of whether an enforceable agreement was in fact formed between Melnitzky and the Kaufmans and/or the Estate, and the underlying merits of the breach of contract claim.

before completing the evaluation of the property in the Estate. The Complaint does not support a claim for fraud by Rose because there are no factual allegations that establish any legal duty by Rose that is independent of any agreement between Melnitzky and the Kaufmans and/or the Estate. Accordingly, the Court finds the allegations in the Complaint insufficient to support a fraud claim.

The Court further finds that the fraud claim is deficient under the applicable federal rule. Under Federal Rule of Civil Procedure 9(b), a plaintiff stating a claim of fraud or mistake must allege the "the circumstances constituting [the] fraud or mistake ... with particularity." Fed. R.Civ.P. 9(b). To satisfy the particularity requirement,

> a plaintiff should specify the time, place, speaker, and content of the alleged misrepresentations.... In addition, the complaint should explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.

*Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir.2001) (internal quotations and citations omitted). The Court finds that Melnitzky has failed to meet this standard even under a liberal reading of the allegations in the Complaint. The Complaint is devoid of any facts from which it can be reasonably inferred that Rose intended to defraud Melnitzky, knew that a false representation had been made to Melnitzky, or had a reckless disregard for the truth. The Court is persuaded that the fraud claim in the Complaint is conclusory and is grounded in the breach of contract claim. Melnitzky's fraud claim thus fails to meet even the minimal pleading requirements. Accordingly, the Court grants Rose's motion to dismiss the first cause of action in the Complaint for failure to state a cause of action upon which relief can be granted.

## 2. *Defamation Claim*

The second cause of action seeks damages for defamation of Melnitzky's reputation resulting from Mr. Kaufman's letter. The Complaint alleges that in the letter, Melnitzky is accused of unlawful entry into Gordon's apartment and that the letter contains statements that question Melnitzky's reputation for honesty and integrity. (*See.* Complaint at ¶ 17.)

Under New York law, a plaintiff alleging defamation must show "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, [and that] ... either cause[s] special harm or constitute[s] defamation per se." *Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (App. Div. 1st Dep't 1999) (citation omitted). The New York Civil Practice Law and Rules mandate that in actions for defamation, "the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally." N.Y. C.P.L.R. ¶ 3016(a) (McKinney 2003).

The Court finds it unnecessary to delve into whether the Complaint alleges facts sufficient to satisfy every element of a claim for defamation.[7] Aside from the

---

7. On its face, the Complaint also fails to state that Melnitzky has in fact suffered harm from the alleged defamation or that the letter contains defamation per se. The only allegation with regard to the publication requirement is that the letter "was circulated among members of Mr. Kaufman's family." (*See* Complaint at ¶ 17.) Melnitzky suggests that Rose's knowledge of the letter and Rose's connection to Soetheby's by itself constitutes

failure to satisfy C.P.L.R. 3016(a),[8] the Complaint also contains no facts to suggest that Rose played any role in the writing or alleged publication of the letter that is the subject of Melnitzky's defamation claim. The Complaint is clear that the letter was written solely by Mr. Kaufman. (*See* Complaint at ¶¶ 15 and 17.) There is no allegation that Rose had any input or otherwise directed the writing of the letter. Thus, even under the most liberal reading of the facts alleged in the Complaint, a defamation claim against Rose cannot stand. As one New York Court has stated, "[i]t is axiomatic that a defendant cannot be held liable for a libelous statement that it did not write or publish." *Khan v. New York Times Co.*, 269 A.D.2d 74, 710 N.Y.S.2d 41, 46 (App. Div. 1st Dep't 2000) (citation omitted). Accordingly, Rose's motion to dismiss the second cause of action sounding in defamation is granted.

### 3. *Conspiracy Claim*

The third cause of action in the Complaint alleges "civil conspiracy to obtain services and avoid the payment of plaintiff's fee." (*See* Complaint at ¶ 18.) The Complaint alleges that Rose's conduct in connection with Melnitzky's retention and subsequent dismissal can be "presumed to be intentionally deceptive and without regard for the responsibility which involved the payment or [sic] the contracted services." (*Id.*) For the reasons stated below, Rose's motion to dismiss the third cause of action in the Complaint is granted.

■ New York does not recognize an action for civil conspiracy unless it is linked to a separate underlying tort. As the New York Court of Appeals has explained, "a mere conspiracy to commit a [tort] is never of itself a cause of action.... Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort...." *Alexander & Alexander, Inc. v. Fritzen*, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 503 N.E.2d 102 (1986) (internal quotations and citations omitted). Furthermore, a plaintiff alleging conspiracy must demonstrate "(1) a corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage." *Suarez v. Underwood*, 103 Misc.2d 445, 426 N.Y.S.2d 208, (N.Y.Sup.1980); *see also National Cong. for Puerto Rican Rights v. City of N.Y.*, 75 F.Supp.2d 154, 168 (S.D.N.Y. 1999).

■ The Court finds that the Complaint fails to allege facts that are legally sufficient to support a claim for civil conspiracy. Melnitzky does not allege in any way that Rose participated in a premeditated scheme with anyone else to avoid payment of Melnitzky's fee. To the extent that Melnitzky's claim of civil conspiracy is linked to his breach of contract claim, it fails to "connect the actions of separate defendants with an otherwise actionable tort." *Alexander*, 68 N.Y.2d at 969, 510 N.Y.S.2d 546, 503 N.E.2d 102. As discussed above, with the Kaufmans not being parties to the present action, Melnitzky's breach of contract claim against Rose fails. Likewise, Melnitzky's claim for civil conspiracy also fails. The Court thus grants

injury to Melnizky's reputation. (*See id.*) The Court finds these allegations insufficient to support a defamation claim. There is nothing in the Complaint to suggest that publication outside the Kaufman family has occurred or that any harm to Melnitzky has resulted therefrom.

8. The Court has not been provided with a copy of the alleged defamatory letter. Also, the Complaint fails to specify the precise statements in the letter that are the subject of the defamation claim.

Rose's motion to dismiss Melnitzky's third cause of action for civil conspiracy.

### 4. *Prima Facie Tort Claim*

 Finally, the fourth cause of action in the Complaint alleges prima facie tort in the alternative or in addition to the first three causes of action. (*See* Complaint ¶ 19.) Under New York law, a plaintiff has a cause of action for prima facie tort for "(1) [the] intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful." *Twin Labs., Inc. v. Weider Health & Fitness,* 900 F.2d 566, 571 (2d Cir.1990) (citation omitted); *see also Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 142–43, 490 N.Y.S.2d 735, 480 N.E.2d 349 (N.Y.1985). A key feature of a prima facie tort claim is a showing of "disinterested malevolence," which means that the defendant's *sole* intent was to cause harm to the plaintiff. *Twin Labs.,* 900 F.2d at 571 (citation omitted). Thus, a prima facie tort claim will not survive if "motives other than disinterested malevolence, such as profit, self-interest, or business advantage" are the driving force behind the defendant's conduct. *Id.* (internal quotations and citations omitted).

 In the Complaint, the prima facie tort claim is simply a restatement of Melnitzky's breach of contract and defamation claims. (*See* Complaint at ¶ 19.) Although the Complaint does allege that Melnitzky's dismissal was a "malicious act that served no purpose," there is no allegation that Rose was responsible for this act. Accepting all of Melnitzky's allegations as true and drawing all reasonable inferences in his favor, it is clear that it was the Kaufmans who dismissed Melnitzky. Moreover, the Complaint clearly suggests that a possible reason for Melnitzky's dismissal was his disagreement with Mrs. Kaufman as to the evaluation of the property in light of the resulting federal and state tax consequences. (*See* Complaint at ¶ 18.) Thus, there is no suggestion in the allegations of the Complaint that Rose possessed "disinterested malevolence" in dismissing Melnitzky.

Melnitzky's prima facie tort claim with regard to the alleged defamation of his reputation fails for the same reasons discussed above, namely, because there is no allegation that Rose authored or otherwise directed the writing of the letter. The Complaint also fails to allege that Rose performed any act in connection with the alleged defamation with the sole motive of causing harm to Melnitzky. Finally, the Complaint fails to plead special damages in connection with the prima facie tort claim, as required under New York law. *See Curiano v. Suozzi,* 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (N.Y.1984). The Court remains mindful of the substantial leeway to be afforded a pro se plaintiff with technicalities when ruling on a motion to dismiss. Nevertheless, the Court finds Melnitzky's prima facie tort action to be legally insufficient even under a liberal interpretation of the Complaint.

For the foregoing reasons, Rose's motion to dismiss the four counts in the Complaint is granted. Melnitzky is not precluded from bringing an action against the proper parties in the proper forum for any possible claims he may deem appropriate, subject to any applicable statute of limitations.

### III. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that defendant Robert Rose's ("Rose") motion to dismiss plaintiff Michael Melnitzky's ("Melnitzky") complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) is GRANTED. The complaint is dismissed in its entirety.

The Clerk of Court is directed to close this case.

**SO ORDERED.**