[841 NYS2d 7]

LATRELL F. SPREWELL, Respondent, v NYP HOLDINGS, INC., et al., Appellants, et al., Defendants.

First Department, June 19, 2007

### APPEARANCES OF COUNSEL

*Hogan & Hartson L.L.P.*, New York City (*Slade R. Metcalf* and *Jason P. Conti* of counsel), for appellants.

No appearance or brief on behalf of respondent.

### OPINION OF THE COURT

BUCKLEY, J.

This action for defamation arises out of a series of articles written by defendant Marc Berman and published in the New York Post, owned by defendant NYP Holdings, Inc. (the Post). Insofar as pertinent to this appeal, plaintiff Latrell Sprewell, a basketball player formerly with the New York Knickerbockers (the Knicks), asserts that he was libeled by statements in Berman's articles regarding the cause of a hand injury, which were based, in part, on information provided by confidential sources, defendants John Does 1 and 2.

It is undisputed that sometime in September 2002 plaintiff sustained a fracture to the fifth metacarpal bone on his right (shooting) hand while on his boat at a marina in Milwaukee. He did not inform the Knicks of the injury until he arrived at the team's practice facility on September 30. Berman wrote an article describing the injury and the fact that plaintiff had not reported it sooner.

The next day, plaintiff underwent surgery, while the rest of the team traveled to its training camp. Berman, who accompanied the team, tried unsuccessfully to contact plaintiff's agent, Robert Gist, to inquire about the cause of the injury. Marvet Britto, plaintiff's publicist, told Berman that plaintiff himself had "no clue" how he had injured his hand, but noted that plaintiff lived and worked out on his boat all summer. Berman reported that conversation in another article.

On October 3, Berman received a telephone call from Duke Castiglione, a sportscaster for NY1 cable channel, who stated

that he had suffered an injury similar to plaintiff's as a result of punching a pole on a basketball court in anger and that such an injury is commonly referred to as a "boxer's fracture." Berman contacted two physician hand specialists, who explained that boxer's fractures are "caused by a punch, usually by punching a hard object like a wall or a pole." Gist, returning Berman's earlier telephone messages, related that plaintiff had told him the fracture occurred while "frantically pulling on a rope" to gain control of his boat in rough waters. The Post's first two editions of October 4 ran Berman's article recounting those details, the fact that the team's general manager had been "peppered with questions regarding how Sprewell broke his pinkie and was even asked if he may have been in a fight," and the information concerning boxer's fractures.

On the evening of October 3, after Berman had transmitted the article to his editors, he was informed by the executive sports editor of an e-mail sent to the Post claiming that plaintiff had been in an altercation on his boat on September 20. Berman called the Milwaukee telephone number listed in the e-mail and spoke with "witness-1," who was not the author of the message, but stated that he had attended a party on plaintiff's boat, during which an uninvited woman vomited from drinking too much alcohol. According to the witness, when the woman and her boyfriend refused to leave, plaintiff tried to punch the boyfriend, but missed and struck the wall. Plaintiff cursed in pain and asked the party attendees not to mention what had happened.

Berman credited the witness's account, particularly in light of what he had learned about boxer's fractures, but wanted an additional source, since the witness was not willing to be named in an article. Berman called back and was put on the phone with the writer of the e-mail, "witness-2," who gave the same version of events as had witness-1 and also did not wish to be identified in any article. During subsequent conversations that night, the witnesses added that plaintiff was the one who had encouraged the woman to drink excessively and that he was drunk when he punched the wall. They provided the first name of the man plaintiff had tried to hit and a partial description of the interior of the boat. When asked why someone associated with plaintiff would reveal such an unflattering event, witness-2 replied that plaintiff should tell the truth because he always presented himself as "keeping it real." Nevertheless, both witnesses feared retaliation by plaintiff and his friends if their identities were revealed.

Berman relayed the account to Britto and asked for a reaction from plaintiff. Britto called back and stated that she had spoken with plaintiff, who denied the validity of the story and claimed to not "even know a Mark." Berman was unable to contact Gist, but he spoke with a confidential source within the Knicks organization who stated that Berman was "on the right track" in believing that plaintiff's injury fell under the definition of a boxer's fracture. Jonathan Supranowitz, a Knicks public relations representative, was unaware of either Gist's or the informants' version.

Berman next called the Milwaukee Police Department and the news department of the Milwaukee Journal, but neither knew of any incident regarding plaintiff. The person who answered the phone at the McKinley Marina, on Milwaukee's lakefront, would not reveal whether or not plaintiff's boat was docked there.

The cumulative evidence convinced Berman that the eyewitnesses were telling the truth, and a revised article, the first claimed to be libelous, was published in the Post's late edition of October 4 and on its Web site. Berman related the account of the "two eyewitnesses who asked not to be identified," as well as plaintiff's denial "[t]hrough one of his publicists."

On October 4, Berman again spoke with witness-2, who stood by his story, but was troubled that ESPN cable channel had inaccurately reported that plaintiff actually hit "Mark." Gist, however, now stated that he no longer wished to be quoted as asserting that plaintiff had injured his hand in a boating accident, since Gist was unsure how it had occurred. The team's coach stated that plaintiff had told him that he "had banged his hand while on his boat."

Dr. Pamela Sherman, a hand surgeon, confirmed for Berman that boxer's fractures most commonly result from punching a wall or other hard surface, and that plaintiff could have suffered such an injury if he hit the wall of his boat in the manner the confidential witnesses claimed, although she had not examined plaintiff or seen his medical records.

In the second complained-of article, published October 5, Berman repeated the confidential witnesses' version and plaintiff's denial, noted Dr. Sherman's comments and the fact that Gist "backpedaled on his prior account," and observed that the "evidence [was] mounting [that] Sprewell fractured his right pinkie by punching a wall during a Sept. 20 altercation at a party on his new yacht." Also, the coach was quoted as saying that for

the moment he had to believe plaintiff but wanted to "find out exactly what the story is" in a face-to-face meeting.

Berman's next complained-of article, published October 7, reported that plaintiff had not returned the coach's phone call, reiterated the previously discussed information, and stated: "The Knicks are not overly concerned about how [plaintiff] injured his hand . . . [and] are more concerned at gauging [his] sincerity when he testifies he didn't feel the hand was hurt and continued to weight lift."

In the final complained-of article, published October 8, nonparty Mark Hale wrote that the Knicks, "[f]ed up with the saga surrounding Sprewell's broken right hand and, more importantly, his failure to inform the club about the injury for two weeks," had fined plaintiff $250,000 and banned him from having contact with the team for an undetermined period of time. The article added, "[l]ast week sources told Post reporter Marc Berman that Sprewell injured his hand during a fracas aboard his yacht where the All-Star threw an errant punch that hit a wall." Plaintiff, however, was reported as telling the team's general manager and coach that he "slipped and fell" on his boat.

Shortly thereafter, plaintiff commenced this action and sought discovery regarding the identity of the two witnesses; the Post and Berman, relying on Civil Rights Law § 79-h (the Shield Law), objected. During discovery, plaintiff deposed two individuals in Milwaukee. Terry Paulson testified that, one night in September 2002, he was sleeping on his boat, docked next to plaintiff's at the McKinley Marina, when he was awakened by a "loud bang and people yelling." Paulson went up to the cockpit and saw a man trying to calm down plaintiff, who was yelling, "[g]et these people off my boat, I don't know them" and "[w]hen I'm done with my work, I'll break my other hand." Previously, Paulson had seen at least 18 people board plaintiff's boat, and now he saw two men help a woman debark and walk down the dock.

Michael Jansen testified that, on a night in September 2002, he was sleeping on his boat, three slips away from plaintiff's, but was woken up by arguing. Arriving on the top deck, Jansen heard people yelling for others to leave, and saw two men assist an intoxicated woman get off the boat. Plaintiff appeared to be agitated.

Where, as here, the plaintiff is a public figure, he may not recover damages for defamation unless he proves, by clear and

convincing evidence, that the published material is false and was made with "actual malice," i.e., with knowledge of its falsity or with reckless disregard of whether it was false (see *Freeman v Johnston*, 84 NY2d 52, 56 [1994], *cert denied* 513 US 1016 [1994]). The standard requires evidence demonstrating inferentially that the defendants subjectively had a high degree of awareness of probable falsity of the complained-of statements or that they entertained serious doubts as to the truth (see *Khan v New York Times Co.*, 269 AD2d 74, 77 [2000]).

Assuming, arguendo, that defendants' statements regarding how plaintiff injured his hand and his alleged attempt to cover up the incident are false, the Post and Berman are entitled to summary judgment. The information was not reported as incontrovertible fact, but rather cautioned the reader that it was based on two confidential witnesses and was denied by plaintiff. The record demonstrates that Berman subjectively believed the informants, whose partial description of the interior of plaintiff's boat provided additional indicia of reliability.

However, Berman and the Post did not rely exclusively on the informants' accounts, either in the articles or their summary judgment motion. Berman sought to verify or disprove the claims, by seeking comments from plaintiff, via his agent and publicist, and speaking with personnel within the Knicks organization, including the team coach, a public relations representative, and a confidential source, as well as seeking out three doctors, the Milwaukee Police Department, the Milwaukee Journal, and the McKinley Marina. Those investigative efforts demonstrate that Berman did not deliberately fail to seek confirmatory information or otherwise act with reckless disregard for the truth (see *Bement v N.Y.P. Holdings*, 307 AD2d 86, 91 [2003], *lv denied* 100 NY2d 510 [2003]; *cf. Collins v Troy Publ. Co.*, 213 AD2d 879, 881 [1995]).

Plaintiff has not presented any evidence to raise a triable issue of fact concerning actual malice, let alone sufficient evidence to establish actual malice by clear and convincing evidence, the standard applicable even on a summary judgment motion (see *Freeman*, 84 NY2d at 56-57; *Khan*, 269 AD2d at 78). Indeed, while plaintiff, through his representatives, denied the accusations of the confidential witnesses, his explanation for the injury continuously changed, from he had "no clue," to he banged it while "frantically pulling on a rope" sailing in rough waters, to he "slipped and fell." And although not relevant to Berman's subjective beliefs at the time he wrote the

articles, the two individuals deposed during discovery gave testimony consistent with the informants' accounts.

Accordingly, the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered April 14, 2006, which, to the extent appealed, granted plaintiff's motion to preclude defendants the Post and Berman from utilizing information provided by confidential sources in support of their summary judgment motion, and denied that part of the Post's and Berman's motion for summary judgment to dismiss as against them the defamation claims based on statements regarding the cause of plaintiff's hand injury, should be reversed, on the law, with costs, the motion to preclude denied, the summary judgment motion granted in its entirety, and the complaint dismissed as against the Post and Berman. The Clerk is directed to enter judgment accordingly.

TOM, J.P., SULLIVAN, WILLIAMS and MALONE, JJ., concur.

Order, Supreme Court, New York County, entered April 14, 2006, reversed, on the law, with costs, plaintiff's motion to preclude denied, defendants NYP Holdings, Inc. and Marc Berman's summary judgment motion granted in its entirety, and the complaint dismissed as against them. The Clerk is directed to enter judgment accordingly.