Swiezy v Investigative Post, Inc. (2024 NY Slip Op 03257)

Swiezy v Investigative Post, Inc.

2024 NY Slip Op 03257

Decided on June 14, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 14, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, GREENWOOD, NOWAK, AND KEANE, JJ.

203 CA 22-01465

[*1]JAMES R. SWIEZY AND GREENLEAF DEVELOPMENT & CONSTRUCTION, LLC, PLAINTIFFS-APPELLANTS,
v
INVESTIGATIVE POST, INC., AND DANIEL TELVOCK, DEFENDANTS-RESPONDENTS. 

PHILLIPS LYTLE LLP, BUFFALO (DAVID J. MCNAMARA OF COUNSEL), FOR PLAINTIFFS-APPELLANTS.
FINNERTY OSTERREICHER & ABDULLA, BUFFALO (JOSEPH M. FINNERTY OF COUNSEL), FOR DEFENDANTS-RESPONDENTS. 

 Appeal from an order of the Supreme Court, Erie County (Mark A. Montour, J.), entered August 12, 2022. The order granted the motion of defendants seeking, inter alia, summary judgment dismissing plaintiffs' complaint. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiff James R. Swiezy is the President of plaintiff Greenleaf Development & Construction, LLC (Greenleaf), a property management, construction, and commercial development company. Greenleaf owned properties adjacent to the State University of New York (SUNY) College at Buffalo (Buffalo State) campus. To address a student housing shortage, Buffalo State approached Swiezy regarding the possibility of Greenleaf building student housing on Greenleaf's properties. BSCR Corporation (BSCR), a private foundation that raises funds from private donors to support Buffalo State, also owned properties adjacent to the Buffalo State campus. After several years of negotiations, Greenleaf's affiliate Campus Walk One, LLC (Campus Walk) entered into a contract with BSCR (BSCR contract) in which the two parties exchanged certain parcels of real property in the neighborhood surrounding Buffalo State. This exchange would allow Greenleaf to build a student housing complex (Campus Walk housing) and BSCR to build a visitor center for Buffalo State. Simultaneously, Campus Walk and SUNY entered into an Affiliation Agreement that essentially required Buffalo State to promote the Campus Walk housing to its students. Buffalo State also agreed to modify its on-campus housing policy for four years "to limit on-campus housing to freshmen, sophomores and juniors only" and, to the extent that beds were available at the Campus Walk housing, to direct students to it "as the preferred alternative for meeting off campus housing needs of any students affected by such change in campus residency policy."
In February 2017, defendant Daniel Telvock, an investigative reporter with defendant Investigative Post, Inc. (IP), completed a story that was published on IP's website and a script that was broadcast on a local television newscast (collectively, reports) regarding the land swap deal and the Affiliation Agreement. The story was titled "Buff State's deal with Greenleaf raises red flags."
In April 2017, plaintiffs commenced this action against defendants asserting two causes of action, for defamation and injurious falsehood, regarding the reports. Plaintiffs alleged that defendants made false statements about the business activities and reputations of plaintiffs, describing them as "unsavory," intentionally ignored verifiable facts concerning plaintiffs' construction of the Campus Walk housing, and falsely implied that plaintiffs gained a commercial advantage by bribing a public official and otherwise engaged in a commercial [*2]relationship in violation of public procurement laws. Defendants answered and asserted a counterclaim for attorneys' fees and costs on the ground that plaintiffs had commenced the action in bad faith. Defendants subsequently moved for summary judgment dismissing the complaint and an award of attorneys' fees and costs. Supreme Court granted the motion, and we now affirm.
Contrary to plaintiffs' contention, the court properly dismissed their cause of action for defamation. The court made a prior determination that plaintiffs are public figures for the purpose of this litigation, which is now the law of the case because plaintiffs did not timely perfect their appeal. A plaintiff in a defamation action must establish by clear and convincing evidence that the published material was false (see Freeman v Johnston, 84 NY2d 52, 56 [1994], cert denied 513 US 1016 [1994]; D'Amico v Correctional Med. Care, Inc., 120 AD3d 956, 962 [4th Dept 2014]; Khan v New York Times Co., 269 AD2d 74, 76 [1st Dept 2000]) and, where the plaintiff is a public figure, the plaintiff must further establish by clear and convincing evidence that the defendant acted with actual malice, i.e., knowledge of the statement's falsity or reckless disregard for the truth (see Gottwald v Sebert, 40 NY3d 240, 251 [2023]; Freeman, 84 NY2d at 56; Khan, 269 AD2d at 76-77).
A libel claim will fail if "the defamatory material on which the action is based is substantially true" (Love v Morrow & Co., 193 AD2d 586, 587 [2d Dept 1993]; see Hope v Hadley-Luzerne Pub. Lib., 169 AD3d 1276, 1277 [3d Dept 2019]). The "omission of relatively minor details in an otherwise basically accurate account is not actionable" (Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 383 [1977], rearg denied 42 NY2d 1015 [1977], cert denied 434 US 969 [1977]). In addition, it is well settled that "[s]ince falsity is a necessary element of a defamation cause of action and only facts are capable of being proven false, . . . only statements alleging facts can properly be the subject of a defamation action" (Davis v Boeheim, 24 NY3d 262, 268 [2014] [internal quotation marks omitted]). "Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation" (Mann v Abel, 10 NY3d 271, 276 [2008], cert denied 555 US 1170 [2009]; see Hope, 169 AD3d at 1277).
Here, we conclude that defendants established, with respect to each of the allegedly defamatory statements, that it was either substantially true (see Hope, 169 AD3d at 1278-1279) or an expression of opinion (see Landa v Capital One Bank [USA], N.A., 172 AD3d 1052, 1054 [2d Dept 2019]; Balderman v American Broadcasting Cos., 292 AD2d 67, 72-73 [4th Dept 2002], lv denied 98 NY2d 613 [2002]), and plaintiffs failed to raise a triable issue of fact. We reject plaintiffs' contention that, even if the statements were not false, they imparted false and defamatory inferences (see generally Armstrong v Simon & Schuster, 85 NY2d 373, 380-381 [1995]). Plaintiffs rely in particular on those parts of the reports stating that Swiezy gave the "golf team" of Buffalo State's Vice President for Finance and Management a "set" of golf drivers that Swiezy had received as a sponsor of Buffalo State's golf tournament, arguing that this conveyed the false implication that Swiezy had bribed a public official. The reports, however, never mentioned the word "bribe," and the reporting was largely accurate. Indeed, we agree with defendants that the reports conveyed by implication that Buffalo State and its officials, as well as BSCR and SUNY, engaged in inappropriate conduct, not that Swiezy bribed a state official. At most, plaintiffs established that the reports created adverse inferences, which is insufficient to maintain this action (see Roche v Hearst Corp., 53 NY2d 767, 769 [1981]).
Moreover, even assuming, arguendo, that the allegedly defamatory statements were false statements of facts, defendants met their burden of establishing that plaintiffs could not show by clear and convincing evidence that defendants published the challenged statements with actual malice (see Kipper v NYP Holdings Co., Inc., 12 NY3d 348, 354 [2009]; DiFabio v Jordan, 113 AD3d 1109, 1110 [4th Dept 2014]). Plaintiffs contend that defendants acted with actual malice when Telvock relied in the reports on a "government expert" (expert) instead of a lawyer to determine whether the BSCR contract and Affiliation Agreement violated state law, and otherwise failed to investigate the expert's claims. However, there is no evidence in the record from which a jury could determine with "convincing clarity" that defendants purposely avoided the truth or entertained serious doubts about the truthfulness of the statements made by the expert (Kipper, 12 NY3d at 356 [internal quotation marks omitted]). The expert sought the legal opinion of a staff attorney, Telvock contacted the New York State Comptroller's Office for an opinion on the matter, and Telvock reported in the story the opinion given by SUNY's counsel.
In opposition to the motion, plaintiffs failed to present "any evidence to raise a triable issue of fact concerning actual malice, let alone sufficient evidence to establish actual malice by clear and convincing evidence" (Sprewell v NYP Holdings, Inc., 43 AD3d 16, 21 [1st Dept 2007]). Plaintiffs' reliance on the affidavit of their expert in journalism is misplaced. The expert proffered an incorrect definition of actual malice and conflated the defamation standards applicable to private persons and public figures. While the defamation standard applicable to private individuals focuses on whether the journalist satisfies objective professional standards (see Gordon v LIN TV Corp., 89 AD3d 1459, 1459 [4th Dept 2011]), the standard applicable to public figures focuses on the journalist's subjective state of mind (see Khan, 269 AD2d at 77). Thus, the expert's emphasis on whether Telvock complied with journalistic standards is of little evidentiary value. As public figures, plaintiffs "must prove more than an extreme departure from professional standards and . . . a [journalist's] motive in publishing a story . . . cannot provide a sufficient basis for finding actual malice" (Harte-Hanks Communications, Inc. v Connaughton, 491 US 657, 665 [1989]).
We reject plaintiffs' further contention that the court erred in dismissing the injurious falsehood cause of action. As explained above, defendants met their burden of establishing, with respect to each of the statements relied upon by plaintiffs, that it was substantially true (see Newport Serv. & Leasing, Inc. v Meadowbrook Distrib. Corp., 18 AD3d 454, 455 [2d Dept 2005]) or constituted opinion (see Shenoy v Kaleida Health, 162 AD3d 1701, 1702 [4th Dept 2018]). Plaintiffs failed to raise an issue of fact in opposition.
Contrary to plaintiffs' contention, the court properly held that defendants are entitled to an award of costs and attorneys' fees on their counterclaim. Under the 2020 amendments to the anti-strategic lawsuits against public participation (anti-SLAPP) statutes, "costs and attorney's fees shall be recovered upon a demonstration, including an adjudication pursuant to [CPLR 3211 (g) or CPLR 3212 (h)], that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law" (Civil Rights Law § 70-a [1] [a] [emphasis added]). Although this lawsuit did not fall within the definition of an "action involving public petition and participation" until the 2020 amendments to the statute (see § 76-a [1] [a] [1], [2]; [d]), and "the intended application [of the amendments to the statute allowing a counterclaim for costs and attorney's fees] is prospective," nevertheless "[t]here is no retroactive effect when [those amendments] are applied, according to their terms, to the continuation of [an] action beyond the effective date of the amendments" (Gottwald, 40 NY3d at 258 [emphasis addded]; see Reeves v Associated Newspapers, Ltd., 2024 NY Slip Op 01898, *6 [1st Dept 2024]). Inasmuch as defendants established that this action was "continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law" (Civil Rights Law § 70-a [1] [a]), they are entitled to an award of costs and attorneys' fees from November 10, 2020, the effective date of the amendments (see Reeves, 2024 NY Slip Op 01898, *11).
We have considered plaintiffs' remaining contentions and conclude that they do not require modification or reversal of the order.
Entered: June 14, 2024
Ann Dillon Flynn
Clerk of the Court