Derek **PEARL**, Plaintiff,

v.

Joseph **TARANTOLA**, as President, et al., **Defendants.**

**No. 73 Civ. 847.**

United States District Court, S. D. New York.

June 27, 1973.

---

Burton H. Hall, New York City, for plaintiff.

Sturm & Perl, New York City, for defendants by Alan F. Perl and David Kaplan, New York City, of counsel.

## OPINION

DUFFY, District Judge.

The plaintiff has been expelled from his Union and brings this action (1) to enjoin the defendants from effectuating the expulsion, (2) to declare the expulsion null and void, and (3) for attorney fees. When the motion for a preliminary injunction was heard, both sides agreed to consolidate that evidentiary hearing with the trial of the case on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. This opinion will constitute findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

At trial, there was little dispute as to the facts. The only real controversy involved the inferences to be drawn from the facts, particularly as to the motivations of the various parties in their sundry actions.

The plaintiff Derek Pearl immigrated to this country some twelve years ago. In his native England, he had been engaged in the manufacture of jewelry, had become deeply involved in the labor movement, and had also become involved in politics. When he arrived in this country, Pearl sought work in the trade, became a member of the International Jewelry Workers Union (hereinafter referred to as "the Union"), and joined the Progressive Labor Party. For some six and one-half years prior to December 7, 1971, Pearl was employed as a diamond setter by K. Polishook & Son, Corp., a New York City jewelry firm. He was also the Union shop steward.

On December 6, 1971, Polishook discharged one of its employees, a Union member, named Joaquin Rivera. The plaintiff either instigated, encouraged or condoned a wildcat strike by all of the employees of Polishook to force the rehiring of Rivera. This strike was in violation of the no-strike clause of the collective bargaining agreement between the defendant Union and the Trade Association of which Polishook was a member. The leadership of the defendant Union sent emissaries to the Polishook plant and convinced the Union members there, including the plaintiff, to return to work.

The employees, in fact, did return to work on the following day (December 7, 1971), but Polishook fired plaintiff as the instigator of the illegal wildcat strike. Subsequently, the discharge of the plaintiff was pursued to arbitration by the Union and the arbitrator ordered the reinstatement of the plaintiff.

But on December 8, 1971, the day after his discharge, the plaintiff did not know what the decision of the arbitrator would be. That morning, the plaintiff, his wife and children showed up in front of the main entrance of the Polishook factory with signs asking the employees' help in regaining his job. The Union member employees of Polishook thereupon staged another wildcat strike. The Union leadership successfully negotiated

with its own members to settle this strike in one day.

A week later, on December 15, 1971, the plaintiff with other Union members and accompanied by his wife, staged a "sit-in" at the Union headquarters. Prior to this "sit-in", certain newspapers were notified and the newspaper "Challenge", "the Revolutionary Communist Newspaper",[1] sent a reporter and photographer to record the event. Pictures were taken, the plaintiff was interviewed, and the resulting story was published alleging that the individual defendants as Union leaders were "spineless".

All of this activity by the plaintiff resulted in intra-union charges being brought against him. On March 22, 1972, a "trial" on these charges was held by the executive board sitting as a tribunal pursuant to Union by-laws. It resulted in the plaintiff's conviction of the following charges:

"2. On or about December 8, 1971, Pearl precipitated a work stoppage in his shop, K. Polishook & Son, Corp., which resulted in the discharge of five other Union members.

\* \* \* \* \* \*

"4. On or about January 20, 1972, Pearl caused a libelous article to be printed in the 'Challenge', a Progressive Labor Party tabloid, which was used to ridicule the Union by an employer, the employees of whom the Union was seeking to organize in Florida. This caused the Union harm in its efforts to organize a shop.

"5. At a membership meeting on December 15, 1971, Pearl admitted attempting to cause a sit-in in the Local No. 1 Union office and tried to publicize this sit-in by supplying this information to a News Agency."

The "verdict" of the Executive Board of the Local Union was against plaintiff "in a general verdict" on all three charges set out above. (Charges one and three were apparently dismissed.) The Union membership at a meeting ratified the decision of the Executive Board, again apparently without special consideration of the various charges brought against plaintiff, and Pearl was formally expelled from Union membership. The charges were never presented to the membership except as a "bundle" and it is impossible to determine which was the basis of the Union membership determination to expel Pearl. In the summer of 1972, the plaintiff appealed this determination to the Executive Board of the International Union, where the Local No. 1 determination was affirmed. Plaintiff was advised that he could further appeal to the General Convention of the Union to be held in May 1974.

Plaintiff challenges the Union's action on the ground that expulsion for charge number 4, i. e., causing a libelous article to be printed in a newspaper, violated both the Labor Management Reporting and Disclosure Act of 1959 (hereinafter "LMRDA") and the First Amendment to the United States Constitution. He argues that even if there was sufficient evidence of the other two charges to justify expulsion on those grounds, the Union's verdict was tainted by its failure to distinguish between the charges.

The defendants argue that the plaintiff cannot be granted any relief at this time since he has not perfected his appeal to the General Convention of the Union. I hold that such is not the law. Section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), preserves the union member's right to institute actions in a court against a union or its officials. The only limitation is that the member

". . . *may be* required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) . . ., before instituting legal or administrative proceedings against such organizations or any officer thereof." (Emphasis added).

---

1. This newspaper is the official organ of and published by the Progressive Labor Party.

■ The limitation of § 411(a)(4) is permissive, as indicated by the use of the word "may". Since the decision of the Second Circuit in Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2nd Cir. 1961), cert. denied, 366 U. S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961), it has been established that the question whether or not a member will have to exhaust his intra-union appeals and, if so, to what extent, is a matter within the discretion of the trial judge. Giordani v. Upholsterers International Union of No. Amer., 403 F.2d 85 (2nd Cir. 1968); Sheridan v. Liquor Salesmen's Union, Local 2, D.R.W. and A.W. I.U.A., 303 F.Supp. 999 (S.D.N.Y.1969); Tirino v. Local 164, Bartenders and Hotel and Restaurant Employees Union, 288 F.Supp. 809 (E.D.N.Y.1968).

The exhaustion principle rests on several policy considerations as the Court in *Detroy* indicated. First, the conservation of judicial time is served when the union member is required to exhaust his union appeals, because the union's procedures may vindicate the rights of the member. In addition, if eventually a court is called upon to resolve the controversy, it may be helpful to the court to have the expertise of the union in interpreting its rules, by-laws and the like. The second rationale is clearly not applicable here. A union has no special expertise in determining issues involving First Amendment rights and their statutory analogs. Nor, in fact, does the first rationale have any force in this case. It is beyond peradventure of doubt that the merits of plaintiff's case are clear, and there is not the slightest scintilla of evidence that the Union will vindicate his rights. It would make no sense to require exhaustion, when the issues are so clear. Libutti v. DiBrizzi, 337 F.2d 216 (2nd Cir. 1964), aff'd on rehearing, 2 Cir., 343 F.2d 460 (1965).

■■ In addition, where one of the charges against a member is said to be

violative of his free speech as guaranteed by the Constitution and by the LMRDA, it is best for a court to step in quickly rather than delay the matter with unnecessary administrative steps. First Amendment rights are among the most fragile possessions of a citizen. Delay in deciding the First Amendment issues could not only endanger the free speech rights of plaintiff but of others of similar persuasion. Therefore, this Court will not require full exhaustion.[2]

■ Having determined that judicial review is appropriate, this Court must consider the proper scope of review, especially with regard to charge 4, which seeks to punish plaintiff for aiding in the publication in "Challenge" of an article allegedly derogatory and defamatory toward the Union. In Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971), an action based on alleged wrongful expulsion from a union, the Supreme Court held that the district court was not empowered by § 411(a)(5) of the LMRDA to interpret union regulations in order to determine the scope of offenses warranting discipline of union members. The general posture of a court reviewing a union's determination is thus limited to a determination whether there was sufficient evidence to support the findings of the union. However, when exercise of free speech and assembly are involved, the scope of review is somewhat different. As the 3rd Circuit in Semancik v. United Mine Workers of America Dist. # 5, 466 F.2d 144 (3rd Cir. 1972) recently held:

"While it is beyond the province of the court to scrutinize whether unions may punish members for particular behavior, (citations omitted), the same prohibitions do not apply to actions involving free speech, the cornerstone of all union democracy." 466 F.2d at 153.

---

2. It is not clear that the Union procedures could be completed within the four month limit set by the statute. Thus, there would be no need on the part of plaintiff to exhaust his remedies to comply with the LMRDA.

Thus, this Court must scrutinize the alleged First Amendment behavior sought to be punished by the Union, to see if such punishment comports with the First Amendment and its statutory embodiment, § 411(a)(2) of the L.M.R.D.A.

Section 411(a)(2) guarantees to the union member the right to free assembly and free expression in the following terms:

> "Every member of any labor organization shall have the right . . . to express any views, arguments or opinions . . .: *Provided*, that nothing therein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations."

This Circuit has been most chary to prevent union discipline which punished or inhibited protected free speech activities of union members. The protection of § 411(a)(2) has been extended to a union member's speech which was libelous of union officials, Salzhandler v. Caputo, 316 F.2d 445 (2nd Cir. 1963), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L. Ed.2d 275 (1963), and to speech which was found to be malicious. Cole v. Hall, 339 F.2d 881 (2nd Cir. 1965). The protection of § 411(a)(2) is not limited to mere spoken words but has been applied to articles published by union members denigrating union officials and their acts. Sheridan v. Liquor Salesmen's Union, Local 2, D.R.W. & A.W.I.U.A., *supra,* 303 F.Supp. 999 (S.D.N.Y.1969).

Defendants argue that under § 411(a)(2) the publication of the article in "Challenge" is not protected activity because it comes within the provisos of that section. The provisos carve out an area of permissible regulation of union members' free speech activity, where the statement or article attacks the union organization as an institution or seeks to interfere with performance by the union of its contractual duties. The article here in question apparently purports to be a report of the activities, including the wildcat strikes, of the Union workers of K. Polishook & Sons, including plaintiff, in the early part of December 1971. The tone of the article is one of praise of the workers for their support of Progressive Laborite Derek Pearl, and is rather acerbic in its characterization of the Union officials' alleged failure to support the members. A careful reading of the article convinces me that neither of the provisos are applicable. The publication of the article in no way interferes with union contractual obligations nor does it appear to advocate such action. The issues as to whether or not the article attacks the Union as an institution raises more serious questions.

It is clear that the article expressly attacks "the union" for collusion with the employer rather than attacking individual union members for such alleged collusion. The contention is thus made that the attacks are on the Union as institution, not on its members.

This mere verbal distinction is not sufficient to bring this statement within the proviso. Obviously, any union collusion could only be accomplished by union members' actions and thus the crux of the attack was upon the actions of the union leadership, not the union as an institution. The Second Circuit, speaking through then Judge, now Chief Judge, Kaufman, in Giordani v. Upholsterers International Union of No. Amer., 403 F.2d 85 (2nd Cir. 1968), a case raising a similar question about the provisos of § 411(a)(2), indicated that the union members' free speech rights do not turn on fine verbal distinctions. If the underlying topic of conversation or publication concerns union affairs, then it is protected by § 411(a)(2). The question of a union's response to laid off or discharged workers is a most basic issue to a union member, and speech dealing with this issue is protected by the act. *Cf.* Nix v. Fulton Lodge

No. 2 of International Ass'n of Machinists and Aerospace Workers, 262 F.Supp. 1000 (N.D.Ga.1967), rev'd on other grounds, Fulton Lodge No. 2 International Ass'n of Machinists and Aerospace Workers v. Nix, 415 F.2d 212 (5th Cir. 1969). Therefore, the expulsion from the Union for publishing or aiding in the publishing of the article in "Challenge" violates § 412, which proscribes any imposition of sanctions by a union on its members for activity protected by § 411.

However, the inquiry is not at an end.

Assuming, without deciding, that the two other charges which also served as a basis for the verdict against plaintiff are properly supported by evidence, the question remains whether the verdict is nevertheless improper because it was a general one, thereby preventing the court from determining whether it was a valid or invalid charge which supported the verdict. In Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), the Supreme Court struck down a general verdict because it was potentially based in part on a charge which impermissibly infringed First Amendment rights. The Court, speaking through Chief Justice Hughes, stated,

" . . . instead of its being permissible to hold, with the state court, that the verdict could be sustained if any one of the clauses of the statute were found to be valid, the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld."

▆ The records of the Union's trial and appeal in this matter are woefully brief and inadequate as regards the nature of the evidence introduced and the deliberations of the trial and appeal bodies; rather, they show a jaundiced preoccupation on the part of the Union with the political persuasion of the ⸵plaintiff. It is impossible for this Court to say that plaintiff's expulsion was not based on charge # 4, and thus the verdict and the expulsion cannot stand. Gleason v. Chain Service Restaurant, 422 F.2d 342 (2nd Cir. 1970).

Defendants argue that the decision of the Supreme Court in Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971) held that the principle of *Stromberg* is not applicable to union expulsion cases. Such reliance on the *Boilermakers* case is misplaced. In the *Boilermakers* case, the Supreme Court held contrary to the District Court that both charges against defendant Hardeman were proper and thus a general verdict could stand. Mr. Justice White in his concurrence noted that the principle of *Stromberg* was inapplicable because *Boilermakers* did not present a situation where one charge was valid and one invalid. In this case, I find that one of the three supporting charges is improper, and thus under *Stromberg* the general verdict must fall.

Moreover, it is clear to me from my observation of the witnesses at the trial and from my examination of the exhibits that the real basis for the plaintiff's expulsion is not only that he may have been guilty of some breach of Union rules, but also that he was a self-avowed Communist and a trouble maker in Union activities.[3] The plaintiff seemed to me to be terribly naive and while I most strongly disagree with his personal philosophy, that is a totally insufficient reason to find against him.

Judgment will enter for plaintiff.

The attorney's fees sought by plaintiff are also to be granted in the amount of $2,500, which I believe to be fair and equitable.

Settle order on notice.

3. See e. g., the "minutes" of plaintiff's hearing before the Union Executive Board where most of the plaintiff's witnesses are gratuitously characterized as "(a Commie)".