Harry **FARRELL**, John Sugrue, Lucia Giacometti, Daniel McNamara, Lisa Vella and John Duffy, Plaintiffs,

v.

Emanuel **HELLEN**, individually and as President of the Local 1–2, Utility Workers Union of America; Jerry Waters, individually and as Vice President of Local 1–2 Utility Workers Union of America; Robert Conetta, as Secretary–Treasurer of Local 1–2, Utility Workers Union of America; Robert O'Brien, individually and as Chairman of the Executive Board of Local 1–2, Utility Workers Union of America; Ronald Davis, individually and as General Counsel of Local 1–2, Utility Workers Union of America; and Local 1–2, Utility Workers Union of America, Defendants.

No. 03 Civ. 4083(JCF).

United States District Court, S.D. New York.

Feb. 9, 2005.

See, also, 2004 WL 433802.

494

Sidney H. Kalban, New York City, for plaintiffs.

Malcolm A. Goldstein, Kohler & Isaacs, LLP, New York City, Judith P. Broach, Joshua Parkhurst, Broach & Stulberg, New York City, for defendant.

### MEMORANDUM OPINION AND ORDER

FRANCIS, United States Magistrate Judge.

This case arises out of conflict between factions of Local 1–2 ("Local 1–2" or the "Union") of the Utility Workers Union of America (the "UWUA"). Plaintiffs Harry Farrell, John Sugrue, Lucia Giacometti, and John Duffy are present or former elected officials of Local 1–2. They generally allege that the defendants abridged their rights to free speech and due process by removing them from office or diminishing their responsibilities and by subjecting them to unfair disciplinary proceedings, all in violation of Title I of the Labor Management Reporting and Disclosure Act (the "LMRDA," commonly known as the "Landrum–Griffin Act"), 29 U.S.C. § 401 *et seq.;* § 301 of the Labor–Management Relations Act (the "LMRA," commonly known as the "Taft–Hartley Act"), 29

U.S.C. § 185; and the plaintiffs' contractual rights as established by Local 1–2's bylaws and the UWUA constitution. Plaintiffs Daniel McNamara and Lisa Vella are members of Local 1–2 who allege that the actions taken against the other plaintiffs deprive them of their right to elect union officers of their choice as guaranteed by the Landrum–Griffin Act. Finally, all of the plaintiffs assert that their union voting rights were violated by the manner in which an election was held to replace the ousted dissident officers. The defendants consist of Local 1–2 and the officers who held control during the relevant period: Emanuel Hellen, the President; Jerry Waters, the Vice President; Robert Conetta, the Secretary–Treasurer; and Robert O'Brien, Chairman of the Executive Board.[1]

All parties agreed to proceed before me for all purposes pursuant to 28 U.S.C. § 636(c). Following completion of discovery, the plaintiffs moved for partial summary judgment, while defendant Waters cross-moved for summary judgment dismissing the claims asserted against him. For the reasons set forth below, each motion is granted in part and denied in part.

*Background*

In November 2002, plaintiffs Farrell, Sugrue, Giacometti, and Duffy were elected as officers of Local 1–2. (Affidavit of Harry Farrell dated July 21, 2004 ("Farrell Aff."), ¶ 2). Mr. Farrell was elected as a Senior Business agent, while Mr. Sugrue, Ms. Giacometti, and Mr. Duffy were elected as Business Agents. (Farrell Aff., ¶ 2). At some point they became disaffected with the controlling group of the Union leadership and began discussing the need for change.

In February 2003, Mr. Farrell called Harcourt Cordew, another Business Agent of Local 1–2, and arranged a lunch meeting on February 25. (Affidavit of Emanuel Hellen dated June 9, 2003 ("Hellen Aff."), at 3rd unnumbered page). At that meeting, Mr. Farrell, along with Mr. Sugrue and Ms. Giacometti, complained about the conduct of the Union President, Mr. Hellen, and discussed two proposed amendments to the Union bylaws that they wished to bring to the membership: one which would mandate drug and alcohol testing for Union officers and another which would provide for the election of a new Union President and Vice President in the event that the incumbent President resigned. (Deposition of Emanuel Hellen ("Hellen Dep."), attached as Exh. 5 to Affirmation of Sidney H. Kalban dated July 22, 2004 ("Kalban Aff."), at 20–27; First Amended Complaint ("FAC"), Exh. 1). The next day, Mr. Cordew reported what had transpired to Mr. Hellen. (Hellen Aff. at 3rd unnumbered page).

Mr. Hellen immediately placed Mr. Farrell, Mr. Sugrue, and Ms. Giacometti on administrative leave with pay. (Hellen Dep. at 34). The day after that, he issued internal union disciplinary charges against the dissidents, alleging that they "committed and/or engaged in malfeasance, misfeasance, nonfeasance, neglect of duty, improper performance of duty, misuse of office, defamation of character of Union Officers and committing [sic] willful harm to the Local Union." (FAC, Exhs. 2, 3, 4 (the "initial charges")). One set of allegations was unique to Mr. Farrell and related to his telephone conversation with Mr. Cordew:

---

1. Ronald Davis, General Counsel of Local 1–2, was also originally named as a defendant. The claims against him have been dismissed.

On February 25, 2003 the accused, in a telephone call with Business Agent Harcourt Cordew:

> Referred to President Emanuel Hellen and Vice–President Gerald Waters in a disparaging manner and otherwise defamed them and referred to them as "Mother–Fuckers."

> He admitted to conspiring with National Vice–President Joseph Flaherty regarding the management of the Local and the drafting of new By–Laws to prevent Vice–President Waters from becoming President.

> He challenged the authority of President Hellen and Vice–President Waters to implement policies and programs to make Business Agents more accountable.

> He acknowledged working with others to take control of the union by altering the existing By–Laws so that he could run for President.

(FAC, Exh. 2). The remaining charges were common to all three dissidents and stemmed from the lunch meeting:

On February 25, 2003 Cordew met with Agents Farrell, Giacometti and Sugrue and:

> Listened to them defame Hellen and Waters and otherwise plot against the Union.

> Giacometti, Sugrue and Farrell challenged the authority of Hellen and Waters to implement polices and procedures to make Business Agents more accountable. They continually referred to President Hellen as a Drunk and Vice–President Waters as being abusive and pushing them too hard. They acknowledged conspiring with Flaherty to alter the existing By–Laws so Farrell could run for President, in violation of direct orders of the President during a staff meeting on January 3, 2003.

> During the meeting they continually referred to Hellen and Waters as "Mother–Fuckers."

(FAC, Exhs. 2, 3, 4).

Shortly thereafter, Mr. Hellen initiated an action against Mr. Farrell, Mr. Sugrue, and Ms. Giacometti in New York State Supreme Court, Nassau County. (Hellen Dep. at 124–27; FAC ¶ 12; Answer ¶ 3).[2] However, he withdrew the case without prejudice on March 19, 2003. (FAC ¶ 37; Ans. ¶ 3). In the meantime, Mr. Hellen, together with Mr. Waters, sent a bulletin dated March 4 to all union members describing the basis for the charges against the dissidents and arguing that "[i]t would seem that the three Officers placed on Administrative Leave with Pay want things to go back to the way they were before. We must not let that happen." (Farrell Aff., Exh. 2).

On March 11, 2003, Mr. Hellen filed amended disciplinary charges (the "amended charges") against Mr. Farrell, Mr. Sugrue, and Ms. Giacometti (the "Charged Members"). With respect to Mr. Farrell, additional charges alleged that he had failed to process a number of union grievances in a timely manner and had failed to report to the union office on a daily basis as Mr. Waters had ordered him to. (FAC, Exh. 10, ¶¶ 1, 2). The amended charges also included assertions about a telephone call that Mr. Farrell had with Mr. Cordew on February 19, 2003, in which he complained about the Union leadership and its policies and stated that Mr. Hellen was always drunk. (FAC, Exh. 10, ¶ 3). The amended charges against Mr. Sugrue alleged that he, too, had failed to process members' grievances quickly.

---

**2.** Although the First Amended Complaint was filed after the defendants' Answer was submitted, it is identical to the original Complaint with respect to these factual allegations.

(FAC, Exh. 11, ¶ 2). Finally, the new charge against Ms. Giacometti was that she misrepresented her whereabouts to Mr. Waters on the day that she and the other dissidents met with Mr. Cordew. (FAC, Exh. 12, ¶ 2). In addition, the original allegations were carried over into each of the amended charges. (FAC, Exh. 10, ¶¶ 4, 5; Exh. 11, ¶ 1; Exh. 12, ¶ 1).

Pursuant to Local 1–2's bylaws, the charges were to be adjudicated by a Trial Committee, chaired by defendant Robert O'Brien. (FAC, Exh. 9). The Union's General Counsel, Ronald Davis, served as counsel to the Trial Committee. (FAC, Exh. 9). The hearing, which took place on April 1, and 2, 2003, was preceded by procedural skirmishing. For example the Charged Members requested a copy of the affidavit of Harcourt Cordew on which the charges were based. (FAC, Exh. 7). Mr. O'Brien initially denied that request (FAC, Exh. 9), but he later relented and provided the document on March 28. (FAC, Exh. 17; Farrell Aff. ¶ 12). Similarly, the Charged Members demanded access to their files in the Union offices and to the files pertaining to grievances that they had allegedly not processed promptly. (FAC, Exhs.13, 16). Mr. O'Brien declined to let them enter the Union premises but sent most of the requested grievance files on March 28. (FAC, Exh. 17; Farrell Aff. ¶ 12). And, although the Charged Members requested an adjournment of the hearing because their attorney would not be available to consult with them outside the hearing room on the scheduled hearing date, Mr. O'Brien denied that request. (FAC, Exhs.13, 15, 16, 17).

When the hearing took place, the Charged Members continued to clash with Mr. O'Brien. He would not let them ask questions about the amendment of the charges (Trial Transcript ("Trial Tr."), attached as Exh. 1 to Farrell Aff., at 205–07), introduce the proposed bylaws as exhibits (Trial Tr. at 360), or ask questions about disparate treatment. (Trial Tr. at 268–72). Mr. O'Brien instructed the members of the Trial Committee that they could vote only on whether to expel the Charged Members and that no other form of discipline could be considered. (Deposition of Robert O'Brien ("O'Brien Dep"), attached as Exh. 2 to Kalban Aff., at 157). Following the submission of the evidence, a majority of the Trial Committee voted to sustain all charges against each of the Charged Members, except for the charge of defamation which had been withdrawn by Mr. Hellen during the hearing. (Kalban Aff., Exh. 14; FAC, Exh. 18). Mr. O'Brien then issued a "Report of the Trial Committee" which summarized the evidence and the committee's recommendations and was circulated to all Union members. (FAC, Exh. 18).

On April 13, 2003, there was a general membership meeting of Local 1–2 at which the Trial Committee's recommendation was put to a vote. That portion of the meeting was chaired by defendant Waters, who limited each Charged Member's time to speak to ten minutes. (Hellen Dep. at 233, 235). He also dictated the order of the speakers and told Mr. Farrell that if he did not go first, he would not be permitted to speak at all. (Deposition of Jerry Waters ("Waters Dep."), attached as Exh. 1 to Kalban Aff., at 181–83). After the Charged Members spoke, Mr. Hellen addressed the membership, and then the Trial Committees Report was put to a vote. (Waters Dep. at 197–98).

The ballot used to record each member's vote asked only whether the member approved or disapproved the Trial Committees Report as to each Charged Members; it did not solicit separate votes on each charge. (FAC, Exh. 19). In close votes, the membership approved the Trial Committee's recommendations with respect to

Mr. Farrell and Mr. Sugrue but rejected them with respect to Ms. Giacometti. (Kalban Aff., Exh. 14). Accordingly, Ms. Giacometti was restored to her position while Mr. Farrell and Mr. Sugrue were removed from office. The deposed officers then filed an appeal with the UWUA.

On September 25, 2003, a membership meeting was held at which the Union members were asked to ratify the appointment of officers whom Mr. Hellen had chosen to replace Mr. Farrell and Mr. Sugrue. That meeting was chaired by Mr. Hellen and can best be described as chaotic. (Affidavit of Paul Albano dated July 21, 004) ("Albano Aff.", Exh. 1; Kalban Aff., Exh. 19). Plaintiff John Duffy, who had testified on behalf of the Charged Members at the Trial Committee hearing, repeatedly tried to raise a point of order but was not recognized by Mr. Hellen. (Albano Aff., Exh. 1). No discussion was held on the proposal to ratify the appointments, a voice vote was taken, and the motion was declared to have passed. (Albano Aff., Exh. 1). When Mr. Duffy asked for a division of the house on that issue, he was ignored. (Albano Aff., Exh. 1). At one point a fight broke out, and a member who was videotaping the proceedings was directed to stop doing so. (Albano Aff., Exh. 1).

On March 2, 2004, the UWUA issued a decision vacating the determinations of the Trial Committee. (Farrell Aff., Exh. 4). It found that the hearing was plagued by numerous procedural flaws that violated the due process requirements of the UWUA constitution and Local 1–2's by-laws. (Farrell Aff., Exh. 4 at 9–11). Local 1–2 has indicated its intent to conduct a new trial with respect to the charges against Mr. Farrell and Mr. Sugrue, and it has not returned them to office.

The plaintiffs filed the original complaint in this action in June 2003 and amended it with leave of court in April 2004. The First Amended Complaint contains nine claims, and the plaintiffs seek summary judgment on liability on the First, Fourth, Fifth, and Eighth Causes of Action, while defendant Waters seeks dismissal of all of the plaintiffs' claims insofar as they pertain to him. I will therefore address each cause of action in turn.

*Discussion*

A. *Summary Judgment Standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 285–86 (2d Cir.2002); *Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co.,* 189 F.3d 208, 214 (2d Cir.1999). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party meets that burden, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vann v. City of New York,* 72 F.3d 1040, 1048–49

(2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 (citation omitted), and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Id.* at 249–50, 106 S.Ct. 2505. "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (internal quotations and citations omitted); *accord Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible"). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

B. *First Cause of Action—Free Speech*

■ Title I of the LMRDA is the "Bill of Rights of Members of Labor Organizations." Section 101(a)(2), entitled "Freedom of speech and assembly," provides:

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2). Further, a union may not "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of [Title I]." 29 U.S.C. § 529. The LMRDA creates a cause of action for a union member whose rights have allegedly been violated. 29 U.S.C. § 412. The freedom of speech provision of the LMRDA applies to elected union officials and, as with all union members, protects them from retaliation for expressing their views on union matters. *See Sheet Metal Workers' International Association v. Lynn,* 488 U.S. 347, 353–55, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989); *Maddalone v. Local 17, United Brotherhood of Carpenters and Joiners of America,* 152 F.3d 178, 183 (2d Cir.1998).

■ Consistent with the LMRDA's basic purpose of "'ensuring that unions [are] democratically governed and responsive to the will of their memberships,'" *Lynn,* 488 U.S. at 352, 109 S.Ct. 639 (quoting *Finnegan v. Leu,* 456 U.S. 431, 436, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982)), a union member's right to free speech is broadly construed. Thus, "criticism of union officers, even when it amounts to slander, is protected speech under the LMRDA[.]" *Petramale v. Local No. 17 of Laborers International Union of North*

*America,* 736 F.2d 13, 16 (2d Cir.1984); *see also Cole v. Hall,* 462 F.2d 777 (2d Cir.1972), *aff'd,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Salzhandler v. Caputo,* 316 F.2d 445 (2d Cir.1963); *Perez v. Local Union No. 30, International Union of Operating Engineers,* No. 98–CV–362, 1999 WL 684156, at *4 (E.D.N.Y. July 12, 1999). Moreover, even if a union member faces legitimate, non-speech-related charges, he may not be disciplined if those charges are intertwined with charges that violate his free speech rights. *See Schermerhorn v. Local 100, Transport Workers Union,* 91 F.3d 316, 324 (2d Cir. 1996); *Petramale,* 736 F.2d at 16–18; *Perez,* 1999 WL 684156, at *5–6; *Pearl v. Tarantola,* 361 F.Supp. 288, 291 (S.D.N.Y. 1973).

■ By these standards, the rights of Mr. Farrell, Mr. Sugrue, and Ms. Giacometti were plainly violated. It is undisputed that they were subjected to discipline. And it cannot be denied that a major part of the charges related to their speech: their advocacy of amendments to the by-laws and their criticism of defendants Hellen and Waters. The Union defendants (Local 1–2, Mr. Hellen, Mr. O'Brien and Mr. Conetta) do not proffer evidence that would contradict this conclusion but instead advance several legal arguments, none of which has merit.

■ First, the defendants maintain that the plaintiffs have failed to exhaust internal Union remedies, since the retrial of the charges against Mr. Farrell and Mr. Sugrue has not yet taken place. But while a Union member "may be required to exhaust reasonable hearing procedures," that requirement no longer applies after charges have been pending for more than four months. 29 U.S.C. § 411(a)(4); *see also Schermerhorn,* 91 F.3d at 325. Here, since the original charges were filed in February 2003, the four-month period for exhaustion lapsed long ago. The defen-

dants nevertheless argue that the exhaustion requirement revived when the UWUA vacated the disciplinary determinations and remanded for a retrial. That position is untenable, since it would mean that a union could extend indefinitely the period for requiring exhaustion by repeatedly denying charged members a proper due process hearing. And, in any event, the UWUA issued its decision in March 2004, again well more than four months ago.

Furthermore, even if it were still timely for the defendants to raise an exhaustion argument, enforcement of the requirement is discretionary. *See Maddalone,* 152 F.3d at 186; *Schermerhorn,* 91 F.3d at 325; *Monaco v. Smith,* No. 00 Civ. 5845, 2004 WL 203009, at *5 (S.D.N.Y. Feb.2, 2004). A court's exercise of that discretion is informed by three factors:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks …; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Maddalone,* 152 F.3d at 186 (quoting *Clayton v. International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America,* 451 U.S. 679, 689, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981)). The burden is on the union to show that its procedures meet these requirements. *Id.* Yet in this case, the defendants have made no such showing. For example, an internal union procedure need not be exhausted if it does not offer all of the relief sought by the plaintiff, including monetary damages. *See id.* at 187. Here, the plaintiffs seek damages, and there is no evidence

that such relief is available through Local 1–2's hearing procedures. Thus, no exhaustion requirement bars the plaintiffs' claims.

█ Second, the defendants argue that they cannot be liable for violating the plaintiffs' freedom of speech because the plaintiffs were not chilled in the exercise of their rights; they continued to vigorously challenge the union leadership. The defendants appear to contend that unless the plaintiffs were deterred from speaking, they suffered no injury. But, in fact, the Charged Members were quite tangibly injured: they were removed from their positions as elected officers.

█ Third, the defendants contend that the plaintiffs were properly disciplined for charges independent of their exercise of free speech: Mr. Farrell and Mr. Sugrue for delaying the processing of grievances and Ms. Giacometti for misrepresenting her whereabouts. The defendants argue that the court's decision in *Petramale* is distinguishable because in that case the invalid charges (that the union member had slandered union officers) and the potentially valid charges (that he had engaged in disruptive conduct) arose from the very same incident. *See Petramale*, 736 F.2d at 18.

To be sure, the Union asserted distinct charges against the plaintiffs in this case. But it then presented the membership only with the choice of approving or disapproving the Trial Committee's verdicts and it imposed the single undifferentiated sanction of expulsion from office on each of the accused members. Thus, the circumstances here are similar to those in *Pearl* where, in addition to being charged with speech-related activities, the plaintiff was accused of precipitating a work stoppage. 361 F.Supp. at 291. The court there found that "[t]he charges were never presented to the membership except as a 'bundle' and it is impossible to determine which

was the basis of the Union membership determination to expel [the plaintiff]." *Id.* So it is here, and the defendants, as in *Pearl*, must live with the consequences of having failed to separate permissible from impermissible grounds for discipline.

█ The plaintiffs having demonstrated that their free speech rights were violated, the next step is to determine which defendants in addition to Local 1–2 itself may be subject to summary judgment. A union official is liable not only if he directly abridges a member's free speech rights, but also if he "aids, abets, instigates, or directs a wrongful use of union power to deprive a member of his rights[.]" *Schermerhorn*, 91 F.3d at 324 (quoting *Rosario v. Amalgamated Ladies Garment Cutters' Union, Local 10, I.L.G.W.U.*, 605 F.2d 1228, 1246 (2d Cir.1979)). Thus, Mr. Hellen is subject to liability. There is no dispute that he initiated the disciplinary charges that infringed the plaintiffs' rights.

█ The plaintiffs contend that Mr. O'Brien participated in the drafting of the amended charges, and, while he seemed to acknowledge this during the Trial Committee proceedings, he testified in his deposition that he had been mistaken. (Trial Tr. at 234; O'Brien Dep. at 29, 32, 40). Although this issue is therefore contested, other undisputed facts establish Mr. O'Brien's liability for aiding and abetting the violations of the plaintiffs' rights. He chaired the Trial Committee, instructed that body as to the disciplinary sanctions that would be imposed, and issued the report to be voted on by the membership. His role was thus integral to the infringement of the plaintiffs' freedom of speech.

The liability of the remaining individual defendants on the First Cause of Action is more problematic. The plaintiffs have failed altogether to specify the role of Mr. Conetta. Mr. Waters has himself moved for summary judgment, arguing that he

did not initiate any charges against the plaintiffs, did not vote on the charges, did not participate in drafting the Trial Committee report, and did not remove the plaintiffs from office. Nevertheless, there is evidence that Mr. Waters participated in a collective decision to bring charges against the accused plaintiffs and to suspend them from office (Hellen Aff. at 3rd and 4th unnumbered pages), that he represented Mr. Hellen in the Trial Committee proceedings (Affidavit of Jerry Waters dated Sept. 9, 2004, ¶ 14), and that he was responsible for limiting and dictating the order of the plaintiffs' presentations at the April 30, 2003 membership meeting. (Hellen Dep. at 233, 235; Waters Dep. at 181–83). Whether such conduct is sufficient to constitute aiding and abetting liability is a matter for the jury to consider.

The plaintiffs' motion for summary judgment as to liability on the First Cause of Action is therefore granted with respect to defendants Hellen, O'Brien, and Local 1–2, and is otherwise denied. Mr. Waters' cross-motion is denied. No relief is appropriate at this juncture. If Mr. Farrell and Mr. Sugrue are ultimately disciplined on the basis of legitimate charges unrelated to their speech, their recovery may be limited to nominal damages. *See Perez,* 1999 WL 684156, at *7. On the other hand, the plaintiffs may be able to prove that by bringing even the seemingly valid charges, the defendants violated their speech rights.

A plaintiff may prove that an otherwise lawful act by a union official violated the LMRDA, where the complained of act was part of a series of oppressive acts by the union leadership that directly threatened the freedom of members to speak out. In order to prevail on such a claim, a plaintiff must prove that the complained of act was not merely an isolated act of retaliation, but was part of a purposeful and deliberate attempt to suppress dissent within the union.

*Schermerhorn,* 91 F.3d at 323 (quoting jury charge with approval); *see also Maddalone,* 152 F.3d at 184–85. In that event, the plaintiffs could be entitled to more substantial monetary damages as well as injunctive relief. Whether such a pattern of oppression existed, however, is an issue fraught with factual disputes and must be decided by the jury.

B. *Second Cause of Action—Due Process*

■ The Second Cause of Action charges that the defendants violated the due process rights of Mr. Farrell, Mr. Sugrue, and Ms. Giacometti as guaranteed by section 101(a)(5) of the LMRDA. (FAC, ¶¶ 158–162). That section provides:

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5). The plaintiffs have not moved for summary judgment on this claim, but Mr. Waters has moved for judgment insofar as it pertains to him.

Mr. Waters is named in several discrete subsections of this cause of action. In paragraph 161(T) of the First Amended Complaint, the plaintiffs allege that he violated their rights by engaging in *ex parte* conversations with Mr. Hellen, Mr. Davis (Local 1–2's counsel), and some of the Trial Committee members during the course of the Trial Committee hearing. (FAC, ¶ 161(T)). While Mr. Waters denies any such conversations (Deposition of Jerry H. Waters, attached as Exh. 1 to the Reply Affirmation of Sidney H. Kalban dated Oct. 18, 2004 ("Kalban Reply Aff."), at 146–47), the plaintiffs insist that they took place. (Deposition of Harry Farrell, attached as Exh. 3 to Kalban Reply Aff., at

58; Deposition of John Sugrue ("Sugrue Dep."), attached as Exh. 4 to Kalban Reply Aff., at 154–57). Taking the plaintiffs' testimony as true, it is nevertheless insufficient to establish a violation of their fair hearing rights. An *ex parte* discussion between an advocate and an adjudicator is not a *per se* violation of due process. *See Clifford v. United States*, 136 F.3d 144, 149 (D.C.Cir.1998); *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir.1986). Furthermore, in this case the plaintiffs have presented no evidence of the content of any *ex parte* communications. Although Mr. Sugrue suggests that because the Trial Committee members asked pertinent questions, they must have been coached (Sugrue Dep. at 156), this is entirely speculative.

In paragraphs 161(AA) through 161(LL), the plaintiffs allege that Mr. Waters and others denied Mr. Farrell and Mr. Sugrue their due process rights by the manner in which the April 30, 2003 membership meeting was conducted. (FAC, ¶¶ 161(AA)–161(LL)). However, the LMRDA mandates only a fair hearing, and although an additional membership vote may be required by union bylaws, federal law does not require that that meeting be conducted according to any particular procedure. *See Dunleavy v. Radio Officers Union, District No. 3, National Marine Engineers Beneficial Association, AFL–CIO*, Civ. A. No. 89–2958, 1992 WL 210575, at *12 (D.N.J. Aug.31, 1992); *Kiepura v. Local Union 1091, United Steelworkers of America*, 358 F.Supp. 987, 992 (N.D.Ill. 1973). These allegations can therefore not serve as the basis for an LRMDA claim.

Finally, the plaintiffs suggest in their brief that Mr. Waters aided and abetted other defendants in violating the Charged Members' due process rights as, for example, when he made certain evidentiary ob-

jections that were sustained by the Trial Committee chair, Mr. O'Brien. These allegations were not included in the complaint, however, and, at any rate, are too vague to survive summary judgment. Mr. Waters shall therefore be granted judgment dismissing the claims against him in the Second Cause of Action.

**C. Third Cause of Action—Free Speech of Plaintiffs McNamara and Vella**

■ In the Third Cause of Action, the plaintiffs allege that in disciplining plaintiffs Farrell, Sugrue, and Giacometti for their dissent, the defendants violated the rights of Lisa Vella and Daniel McNamara by deterring them from exercising their own free speech rights. (FAC, ¶¶ 163–165). Again, only Mr. Waters has moved for summary judgment on this claim.

Mr. Waters acknowledges that union members whose rights have not been directly infringed may nevertheless assert a claim on the basis of the chilling effect of a pattern of oppression. *See Bentivegna v. Fishman*, No. 02 Civ. 4028, 2002 WL 1586957, at *13–14 (S.D.N.Y. July 17, 2002). Nevertheless, he argues that the actions taken against the charged defendants are not sufficient to constitute a pattern.[3]

That is not the case. To begin with, the limited duration of the acts alleged is not dispositive. "[A] dissenting faction need not endure years of harassment before a ... claim will lie." *Maddalone*, 152 F.3d at 184. Acts of sufficient severity can constitute a pattern of oppression even if they do not span a protracted period of time. *See Bentivegna*, 2002 WL 1586957, at *14. Here, there is evidence not only that charges were brought against elected officers because they criticized the en-

---

**3.** He also notes that this claim is derivative of the First Cause of Action, so that if he were entitled to judgment on that, he would be on

this as well. However, as discussed above, his motion with respect to the First Cause of Action is denied.

trenched faction and attempted to amend the union bylaws, but also that the hearing process and membership meetings were manipulated to achieve convictions, and that the dissident officers were even haled into court on defamation charges. It cannot be determined as a matter of law that such actions are not serious enough to qualify as a pattern of oppression that would chill the rights of other Union members. That is an issue for the jury, and Mr. Waters' motion for judgment on this claim is therefore denied.

### D. Fourth Cause of Action—Violation of UWUA Constitution

The plaintiffs allege in the Fourth Cause of Action that various procedural defects in the disciplinary proceedings violated the rights of Mr. Farrell, Mr. Sugrue, and Ms. Giacometti under the UWUA constitution. (FAC, ¶¶ 166–178). The Union defendants have not explicitly addressed this claim.

 Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). "Union constitutions are considered 'contracts within the meaning of § 301' and 'individual union members may bring suit under § 301 for violation of a union constitution.'" *Monaco*, 2004 WL 203009, at \*10 (quoting *Schepis v. Local Union No. 17, United Brotherhood of Carpenters and Joiners of America*, 989 F.Supp. 511, 516–17 (S.D.N.Y. 1998)); *see also Woodell v. International Brotherhood of Electrical Workers, Local*

71, 502 U.S. 93, 101, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991); *Wall v. Construction & General Laborers' Union, Local 230*, 224 F.3d 168, 178 (2d Cir.2000); *Shea v. McCarthy*, 953 F.2d 29, 31–32 (2d Cir. 1992).

 In this case, the UWUA constitution provides that a member subject to disciplinary charges "shall have a fair and impartial hearing and shall have the right to make an opening statement, to be present throughout the hearing, to offer witnesses and evidence, to confront and cross-examine witnesses, and to make a closing statement." (National UWUA Constitution, Article XIV, § 11–A, attached as Exh. 6 to FAC). Yet, it is undisputed that the defendants denied the Charged Members an adjournment so that their attorney could be available for consultation during the hearing (FAC, Exhs.13, 15, 16, 17); produced the affidavit of Harcourt Cordew on which the charges were based only a few days before the hearing (Farrell Aff., ¶ 12); did not produce files for all of the grievances that Mr. Farrell allegedly did not process promptly (Farrell Aff., ¶ 13); utilized Mr. Davis as counsel to the Trial Committee, although he had acted as Mr. Hellen's attorney in the state court defamation action against the Charged Members (O'Brien Dep. at 74–75, 90); denied the Charged Members the opportunity to present evidence of disparate treatment (O'Brien Dep. at 119–21; Trial Tr. 238, 268–72); denied the accused the opportunity to call witnesses in the order they preferred or to recall Mr. Cordew as a witness (Trial Tr. 245–46, 264); and denied them the opportunity to make closing statements. (O'Brien Dep. at 149; Trial Tr. at 551). The UWUA has found these actions to be a violation of the requirements of its constitution. (Farrell Aff., Exh. 4 at 9–12). In addition, the UWUA constitution requires that a disciplinary hearing be conducted "no earlier than thir-

ty (30) days from the date of the certified notice of hearing so that both parties can adequately prepare for the trial." (National UWUA Constitution, Article XIV, § 7–A). Here, the hearing was held 21 days after the amended charges—which were materially different from the initial charges—were filed.

The plaintiffs, then, are entitled to summary judgment on the LMRA claim for violation of their rights under the UWUA constitution. As the chair of the Trial Committee, Mr. O'Brien made the rulings at issue and is therefore liable, as is Local 1–2. The roles, if any, of Mr. Hellen and Mr. Conetta have not been established, and, accordingly, summary judgment is denied as to them.

Finally, as the plaintiffs concede, this claim must be dismissed with respect to Mr. Waters. Individual union officials are not subject to claims for damages under § 301. *See Monaco*, 2004 WL 203009, at *12; *Madden v. International Association of Heat and Frost Insulators and Asbestos Workers*, 889 F.Supp. 707, 713 (S.D.N.Y. 1995). And, although such officials may be subject to equitable relief in their official capacities, *see Monaco*, 2004 WL 203009, at *12; *Madden*, 889 F.Supp. at 712–13, Mr. Waters is no longer an official of Local 1–2 and so would not appropriately be the target of an injunction. *See Guzman v. Bevona*, 90 F.3d 641, 650 (2d Cir.1996).

E. *Fifth Cause of Action—Tortious Interference with Contract*

The plaintiffs' Fifth Cause of Action asserts a supplemental claim under state law for tortious interference with contract. (FAC, ¶¶ 179–185). In effect, the plaintiffs contend that by denying them a proper disciplinary hearing, the defendants interfered with their contractual rights under the UWUA constitution and Local 1–2's bylaws. The plaintiffs have moved for summary judgment on this claim, and Mr. Waters has cross-moved to dismiss it as it relates to him.

 To prevail on a claim of tortious inference with contract under New York law, a plaintiff must establish:

(a) that a valid contract exists; (b) that a "third party" had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff.

*Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir.1996) (citations omitted). Most importantly for purposes of this case, in order to meet the "third party" requirement, "a plaintiff bringing a tortious interference claim must show that the defendants were *not parties to the contract.*" *Id.* at 1295 (citing *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97 (1956)). The parties to a contract include the parties' agents and employees, and "[i]n order to show that a defendant-employee is a 'third party,' a plaintiff must show that the defendant-employee has exceeded the bounds of his or her authority." *Id.* (citations omitted). One way that a plaintiff may do so is to demonstrate that the agent acted out of malice or self interest. *See Albert v. Loksen*, 239 F.3d 256, 275 (2d Cir.2001); *Cohen v. Davis*, 926 F.Supp. 399, 404 (S.D.N.Y.1996); *BIB Construction Co. v. City of Poughkeepsie*, 204 A.D.2d 947, 948, 612 N.Y.S.2d 283, 285 (3d Dep't 1994) (an agent "cannot be held liable for inducing [its] principal ... to breach its contract with plaintiff ... [except] ... when an agent does not act in good faith and commits independent torts or predatory acts directed at another for pecuniary gain").

 In this case, there is evidence from which the jury could infer that the individual defendants, including Mr. Waters, acted in their self interest in attempt-

ing to retain their positions in the face of the challenge by the dissidents, and without regard for the welfare of Local 1–2. On the other hand, the jury could well reach the opposite conclusion. Accordingly, both motions for summary judgment on this claim shall be denied, except that it shall be dismissed as against Local 1–2, since there can be no argument that this defendant is a third party to its own contracts.

### F. Sixth Cause of Action—Breach of Contract

■■■ The Sixth Cause of Action alleges breach of contract. (FAC ¶¶ 186–190). The plaintiffs assert that by denying Mr. Farrell, Mr. Sugrue, and Ms. Giacometti a due process hearing, the defendants violated their rights as guaranteed by Local 1–2's bylaws which the defendants purportedly promised to comply with. Only Mr. Waters has moved for summary judgment on this claim.

The plaintiffs' theory here is rather opaque. The individual defendants, including Mr. Waters, are not parties to any contract with the plaintiffs and did not become so simply by representing that they intended to abide by the bylaws. "[I]t is well established under New York law that an agent will not be held personally liable for the breach of a contract by a disclosed principal absent some indication that the agent intended to be so bound." *Melnitzky v. Rose*, 299 F.Supp.2d 219, 225 (S.D.N.Y.2004) (citations omitted); *see also Leutwyler v. Royal Hashemite Court of Jordan*, 184 F.Supp.2d 303, 309 (S.D.N.Y. 2001). As there is no indication whatever that Mr. Waters could personally become a party to any contract entered into by Local 1–2, nor that he ever wished to do so, he is entitled to summary judgment on this claim.

### G. Seventh Cause of Action—Right to Elect Officers

In the Seventh Cause of Action, plaintiffs McNamara and Vella allege that their rights as union members under the LMRDA to be represented by properly elected union officers were infringed by the defendants' illegal suspension from office of Mr. Farrell, Mr. Sugrue, and Ms. Giacometti. (FAC, ¶¶ 191–196). The plaintiffs have not sought summary judgment on this claim, but Mr. Waters has moved to dismiss it.

Mr. Waters presents two arguments. First, he correctly observes that this claim is derivative of the plaintiffs' First and Second Causes of Action, and he contends that since those claims should be dismissed as against him, this one should be as well. However, this argument is unavailing because I have denied Mr. Waters' motion with respect to the First Cause of Action. Second, he reasons that as union members who were not themselves directly subject to discipline or other adverse action, Mr. McNamara and Ms. Vella only have standing if there was a pattern of oppression of dissent. That is correct, but, as discussed above, the plaintiff may be able to prove such a pattern at trial, and it would therefore be premature to grant Mr. Waters' motion on grounds of lack of standing.

### H. Eighth Cause of Action—Political and Speech Rights

■■■ In the Eighth Cause of Action, the plaintiffs assert that their free speech rights under § 101(a)(2) of the LMRA as well as their rights to equal participation in union elections under § 101(a)(1) were violated by the defendants in the course of the September 25, 2003 membership meeting at which the replacements for Mr. Farrell and Mr. Sugrue were ratified. (FAC, ¶¶ 197–260). The plaintiffs have moved for summary judgment on this

claim and the Union defendants have opposed the motion. The plaintiffs represent that they have not asserted this claim against Mr. Waters, who was no longer an officer of Local 1–2 when that meeting took place.

The union defendants argue that no relief may be granted to the plaintiffs in connection with this cause of action because the United States Department of Labor has primary jurisdiction over disputes concerning union elections. Indeed, Title IV of the LMRDA, 29 U.S.C. § 481 *et seq.*, governs the procedures for union elections. And the enforcement provisions of Title IV provide that a union member may file a complaint with the Secretary of Labor concerning any alleged violation of the LMRDA arising out of such an election. 29 U.S.C. § 482(a). Only if the Secretary then files suit to set aside the election does the district court assume jurisdiction. 29 U.S.C. § 482(b) & (c).

However, these limitations on the court's role only apply when an election is covered by Title IV. *See BLE International Reform Committee v. Sytsma,* 802 F.2d 180, 191 (6th Cir.1986) (recall elections not mandated by Title IV and therefore not subject to its exclusive remedies). The election at issue in the Eighth Cause of Action—to fill vacancies created by the removal of the plaintiffs—is not. The pertinent section of the Code of Federal Regulations provides in part:

> Title IV governs the regular periodic elections of officers in labor organizations subject to the Act. No requirements are imposed with respect to the filling by election or other method of any particular office which may become vacant between such regular elections. If, for example, a vacancy in office occurs in a local labor organization, it may be filled by appointment, by automatic succession, or by a special election which need not conform to the provisions of Title IV.

29 C.F.R. § 452.25; *see also Talley v. Reich,* No. CIV. A. 93–2857, 1993 WL 483192, at *3–4 (E.D.Pa. Nov.23, 1993) (Title IV inapplicable to interim election to fill vacancy). Therefore, this Court could grant the plaintiffs a remedy.

■ Nevertheless, disputed factual issues preclude summary judgment. At the plaintiffs' behest, I have reviewed video and audiotapes of the September 25 membership meeting. Without further evidence, it is impossible to discern whether the breakdown of procedures was attributable to the defendants or to the generally chaotic conditions. Furthermore, it is appropriate for the jury to determine which deviations from established procedures were material; it is doubtful that every violation of Robert's Rules of Order by itself establishes a claim under the LMRDA. The plaintiffs' motion for summary judgment on this cause of action is therefore denied.

## I. Ninth Cause of Action—Reassignment of Duties

Finally, the plaintiffs contend in the Ninth Cause of Action that the defendants retaliated against Mr. Duffy and Ms. Giacometti by reducing their roles as officers in violation of their rights to free speech and due process guaranteed by sections 101(a)(2) and 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(2) & (5). (FAC, ¶¶ 261–271). The plaintiffs have not sought summary judgment on this cause of action, and they have not asserted this claim against Mr. Waters. Therefore, it need not be considered at this time.

## Conclusion

For the reasons set forth above, the plaintiffs' motion for summary judgment as to liability is granted with respect to the First Cause of Action insofar as it asserts

508

claims against Local 1–2, Mr. Hellen, and Mr. O'Brien and denied for claims against Mr. Conetta and Mr. Waters. Their motion is granted with respect to the Fourth Cause of Action as to Local 1–2 and Mr. O'Brien, and denied as to Mr. Hellen and Mr. Conetta. The plaintiffs' motion is denied with respect to the Fifth and Eighth Causes of Action. Mr. Waters' cross-motion for summary judgment is granted as to the Second, Fourth, and Sixth Causes of Action, and denied as to the First, Third, Fifth, and Seventh Causes of Action.

SO ORDERED.